BRAKEBUSH BROTHERS, INC. and Employers Insurance of Wausau, Plaintiffs-Respondents-Petitioners,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

Richard Alan ENGEL, Defendant.

Supreme Court

*No. 95–2586. Oral argument March 5, 1997.—Decided June 12, 1997.*

(Also reported in 563 N.W.2d 512.)

624

For the plaintiffs-respondents-petitioners there was a brief by *Raymond G. Clausen* and *Law Offices of Stilp and Cotton*, Madison and oral argument by *Raymond G. Clausen*.

For the defendant-appellant the cause was argued by *Jennifer Sloan Lattis*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Brakebush Brothers, Inc. and Employers Insurance of Wausau (Brakebush) seek review of an unpublished decision of the court of appeals granting worker's compensation temporary disability benefits to Richard Engel (Engel), a former employee of Brakebush. Brakebush Brothers suspended and then terminated Engel during his healing period for making false representations regarding a work-related injury. Now Brakebush argues that Engel's termination relieved it of its liability to pay Engel worker's compensation temporary disability benefits for the concededly compensable injury. The Labor and Industry Review Commission (LIRC) found that Engel was entitled to disability benefits until the end of his healing period despite his termination. We agree. We hold that LIRC's finding that Engel was entitled to temporary disability benefits until April 6, 1992, for his work-related injury is sustained by credible and substantial evidence, and Brakebush failed to submit adequate proof rebutting the extent of Engel's injury. We further hold that the Worker's Compensation Act does not provide an exception to an employer's liability when an employee is terminated for misrepresentations relating to his or her medical condition. Accordingly, we affirm.

625

¶ 2. The relevant facts for purposes of this review are as follows: On April 10, 1990, while working for Brakebush, Richard Engel injured his back as he lifted an 80 pound box of chicken parts. As a result of this injury, Engel was temporarily unable to work. He underwent a diskectomy in May, 1990. He returned to work in August 1990, but continued to have problems with his back, resulting in occasional missed days at work, periodic light duty restrictions, and extensive physical therapy and medical care throughout 1990 and 1991. Brakebush has a liberal return to work policy and accommodated Engel's light duty work restrictions. On September 16, 1991, Engel reinjured his back at work. He immediately saw Dr. Moede, an emergency room physician, who prescribed bed rest. Janet Van Epps, the benefits manager at Brakebush Brothers, spoke with Engel after Dr. Moede's examination. Engel told her that he understood the doctor's restrictions. Three days later, Engel purchased a bow hunting license.

¶ 3. On October 10, 1991, Engel visited his treating physician, Dr. Leonard. Dr. Leonard diagnosed acute exacerbation of lumbar pain, possibly involving a herniated or enlarged disc. He prescribed physical therapy for Engel and concluded that Engel would be unable to work for the next three weeks.

¶ 4. Between September 16 and November 6, 1991, while Engel was not working and was receiving temporary total disability benefits, Brakebush conducted a private investigation and discovered that Engel had been bow hunting and playing pool. Engel did not mention these activities to either his employer or his doctors. In fact, at the DILHR hearing, Van Epps testified that on October 11, 1991, Engel told her he had been "staying at home and taking it easy."

¶ 5. On November 5, 1991, Dr. Leonard determined that Engel could resume light duty work. However, on November 7, 1991, Brakebush suspended Engel and on November 12, 1991, Brakebush terminated him for gross misconduct. Brakebush company policy prohibits "misrepresentation of facts or giving false or misleading information regarding a work injury." Brakebush concluded that despite being diagnosed as totally incapacitated and ordered by Dr. Leonard to bed rest following his September 16, 1991 work injury, Engel had been playing in a pool league at a local establishment and bow hunting.

¶ 6. Upon learning that Brakebush had terminated Engel for failing to follow his prescription of bed rest, Dr. Leonard sent a letter to Brakebush's insurance company stating that he never meant to restrict Engel to bed rest. He explained that, rather than prohibit specific activities, he routinely encourages his patients to use their common sense in selecting activities that do not aggravate their pain. Dr. Leonard also stated that he had recommended walking to Engel as a form of therapy for his back. Dr. Leonard noted in the letter that he had received a copy of the surveillance report on Engel. Dr. Leonard reported that he was continuing to treat Engel for his back injury and would continue treatment until the end of Engel's healing plateau, which he later determined to be April 6, 1992.

¶ 7. The Worker's Compensation Division of the Department of Industry, Labor and Human Relations (DILHR) held two hearings in 1992. During these hearings, Brakebush conceded that Engel had suffered a compensable injury. Brakebush also conceded all temporary total disability and permanent partial disability benefits that had been paid to Engel before November 6, 1991, as well as permanent partial disability bene-

fits. Accordingly, DILHR concluded that the only benefits at issue were those that accrued between November 6, 1991 and April 6, 1992, the date Engel reached the end of his healing period.

¶ 8.   DILHR reviewed reports from several doctors who had examined Engel. All diagnosed a back injury. DILHR reviewed Dr. Leonard's reports and his December 16, 1991 letters to Brakebush's insurance company. In his reports, Dr. Leonard opined that Engel could return to light duty work as of November 5, 1991, and would reach his healing plateau on April 6, 1992. DILHR found Dr. Leonard's opinion to be credible. On October 2, 1992, DILHR ordered Brakebush to pay Engel the temporary total disability benefits that accrued between November 6, 1991 and April 6, 1992. On January 20, 1994, LIRC affirmed DILHR's factual findings and order.

¶ 9.   The circuit court overruled LIRC. The court of appeals reversed the circuit court and affirmed LIRC's decision to award benefits to Engel. The court of appeals found that because the record contains medical evidence that Engel was disabled, and does not contain evidence that the physical activities Engel engaged in were inconsistent with disability, LIRC necessarily found Engel disabled under *Leist v. LIRC*, 183 Wis. 2d 450, 462, 515 N.W.2d 268, 272 (1994). Further, the court of appeals found that Wis. Stat. § 102.43 plainly does not allow an exception to an employer's liability to pay disability benefits where the employee is subsequently fired for misconduct during the period of disability.

¶ 10.   Brakebush argues that an employee terminated for misrepresenting his or her physical abilities is not entitled to collect temporary disability benefits after being terminated. LIRC contends that its factual

findings that Engel suffered a compensable injury and that his healing plateau was reached on April 6, 1992 must be upheld because they are supported by credible and substantial evidence and were not adequately rebutted by Brakebush. It further contends that the Worker's Compensation Act does not provide an exception to an employer's liability when an employee is terminated for misrepresentations relating to his or her medical condition. We agree with LIRC. Accordingly, we affirm.

¶ 11. This case presents two issues. First, whether the record contains credible and substantial evidence to support LIRC's determination that Engel was entitled to temporary disability benefits for his work-related injury. The answer to this issue involves the question of whether Brakebush submitted adequate proof rebutting the extent and duration of Engel's injury. Second, whether an employee who is terminated for making misrepresentations relating to his or her physical activities is entitled to worker's compensation disability benefits for a concededly work-related injury.

■

¶ 12. This court reviews the decision of LIRC, not that of the circuit court. *Stafford Trucking, Inc. v ILHR Dept.*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981).

■

¶ 13. The first question involves LIRC's finding that Engel's back injury reached its healing plateau on April 6, 1992. The determination of the extent or duration of a disability is a question of fact. *Vande Zande v. IHLR Dept.*, 70 Wis. 2d 1086, 1095, 236 N.W.2d 255 (1975). LIRC's factual findings are conclusive so long as they are supported by credible and substantial evi-

dence. Wis. Stat. § 102.23(6) (1993–94); *Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984). This court does not weigh the evidence or pass upon the credibility of the witnesses; the weight and credibility of medical evidence are to be determined by LIRC. *E. F. Brewer Co. v. ILHR Dept.*, 82 Wis. 2d 634, 637, 264 N.W.2d 222 (1978).

¶ 14. The second question requires us to interpret the Worker's Compensation Act (the Act). In certain situations, we defer to LIRC's interpretation of the Act. However, the issue we confront today is one of first impression. Accordingly, we are not bound by LIRC's legal conclusions and review them *de novo*. *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 245–246, 493 N.W.2d 68, 73–74 (1992).

¶ 15. First, we consider whether the record contains credible and substantial evidence that Engel's healing plateau was reached on April 6, 1992, keeping in mind that the role of this court upon review is to search the record to locate credible evidence to support LIRC's factual findings. *Vande Zande*, 70 Wis. 2d at 1097. Brakebush concedes that Engel suffered a compensable injury on September 16, 1991. The record contains several reports by Dr. Leonard, Engel's treating physician. On October 10, 1991, Dr. Leonard wrote that Engel should not return to work for three weeks. In a later report, he concluded that Engel would be able to return to light duty work on November 5, 1991. Dr. Leonard later concluded that Engel reached his healing plateau on April 6, 1992. LIRC found Dr. Leonard's opinion credible.

¶ 16. Brakebush challenges the credibility of Dr. Leonard's diagnosis and determination of the healing period. Essentially, Brakebush argues that if Engel

was playing pool and bow hunting, he could not have been disabled.[1] If Engel was not disabled, then he was not entitled to worker's compensation benefits.

¶ 17.   Brakebush argues that since Engel did not inform Dr. Leonard of his recreational activities, Dr. Leonard's opinions are not credible. However, a reasonable inference can be drawn from the record that Dr. Leonard was aware of Engel's activities, as evidenced by Dr. Leonard's December 16, 1991 letter to Brakebush's insurance company in which he stated that he had received a surveillance report from them. Dr. Leonard declined to comment upon the surveillance report. However, he did comment on Brakebush's contention that Engel's activities were inconsistent with bed rest. Dr. Leonard stressed that he does not prescribe bed rest to his patients; rather, he encourages them to use their common sense in selecting activities which do not exacerbate their condition. After this letter, Dr. Leonard continued to treat Engel until the end of his healing period. We conclude that the record contains credible and substantial evidence supporting LIRC's findings that Dr. Leonard's opinion is credible.

¶ 18.   Next, we consider whether Brakebush adequately rebutted the extent and duration of Engel's injury. If an employee produces medical evidence of a work-related injury, an employer must produce evidence contradicting the employee's claim in order for

---

[1] Brakebush also argues that by convincing his employer that he was at bed rest from the date of his injury until the date of his suspension, when he was in fact bow hunting and playing pool, Engel effectively refused light duty work during this time. We do not address this argument because it is not at issue. Brakebush has paid and conceded benefits for this time period.

LIRC to deny worker's compensation benefits to the employee. *Leist*, 183 Wis. 2d 450. Engel claims a work-related injury, and he presented medical evidence of his injury which LIRC found credible. Brakebush presented evidence that Engel participated in recreational activities which perhaps appear, to the lay person, to be incompatible with his disability. Brakebush submitted evidence showing that Engel had played pool and bow hunted during his disability leave. At the DILHR hearings in 1992, Brakebush proved that Engel lied to his employer about his recreational activities. Brakebush contends that this evidence adequately rebuts evidence of the extent and duration of Engel's injury. We disagree.

¶ 19. In order to deny disability benefits, if an employee submits credible and substantial evidence of a compensable injury, *Leist* directs that LIRC must point to some evidence that raises a legitimate doubt as to whether someone suffering with the alleged injury could engage in the alleged physical activities. *Leist*, 183 Wis. 2d at 461. Brakebush presented evidence that Engel was able to bow hunt and play pool. However, it failed to present any evidence that a person able to engage in these activities was also able to perform light duty work. Instead, Brakebush asks this court to rely on its cultivated intuition to make that assumption. *Leist* prohibits us from doing so. *Leist*, 183 Wis. 2d at 462.

¶ 20. Brakebush was not required to present an expert medical opinion to support a legitimate doubt although such an opinion would have been relevant. *Id.* at 461. Brakebush could also have provided a concession from Engel relating to the severity of his injury or his ability to work, or evidence from a medical text indicating that Engel's recreational activities were

inconsistent with his claimed injury. *Id.* Brakebush, however, provided no such evidence. In its memorandum opinion, LIRC concluded:

> The employer submitted no medical evidence indicating that the applicant's bow-hunting or pool-playing activities altered the course of his healing, and Dr. Leonard's letter dated December 16, 1991, leads to the inference that such activities did not change the course of healing.

We agree. Accordingly, we conclude that Brakebush failed to adequately rebut Dr. Leonard's opinion.

¶ 21. Finally, Brakebush argues that employers should be relieved from liability for worker's compensation disability benefits to an employee who is terminated for misrepresenting his or her physical abilities. Brakebush's argument focuses on Engel's deceitful conduct and his termination. Engel was terminated because he lied about his recreational activities. He misled his employers into believing that he was staying at home on bed rest when he was, in fact, playing pool and bow hunting. This court in no way condones Engel's behavior. However, the issue of whether Engel should have been terminated is not before us. Nor is it relevant to our determination. Our analysis is governed by the Worker's Compensation Act.

¶ 22. The Act provides that liability shall exist against an employer where: (1) the employee sustains an injury; (2) at the time of the injury, the employee is performing service growing out of and incidental to his or her employment; and, (3) the injury arises out of his or her employment. Wis. Stat. § 102.03(1)(a), (c) and (e) (1993–94). The Act is essentially a no-fault law which

seeks to make employees, good or bad, whole again after a work-related injury.

¶ 23. Brakebush concedes that Engel sustained an injury and that the injury occurred while Engel was performing service growing out of and incidental to his employment. However, Brakebush asks this court to find an exception to the Act that will excuse employers from liability under the statute where an employee is discharged for making misrepresentations relating to his or her medical condition.

¶ 24. In its memorandum opinion, LIRC concluded that the Act contains no provision for terminating compensation when employment is terminated so long as the employee is still disabled:

> [W]hile the employer appears to have had sound reasons for terminating the applicant, this does not relieve the employer/insurance carrier from the obligation to pay temporary total disability benefits for the period in question. . . .To the employer and its insurance carrier, it may seem inequitable that the applicant is able to receive temporary disability benefits after having been discharged for good cause. However, worker's compensation is a statutory program and there is no provision in Chapter 102 which would allow the cutoff of temporary disability benefits as long as the work injury continues to cause disability. . .The only medical evidence of record leads to the conclusion that up until April 6, 1992, the applicant continued to be temporarily totally disabled due to the effects of the work injury.

¶ 25. We agree with LIRC's interpretation of the Act. Wisconsin has a long history of providing benefits to employees despite their misconduct. In *Karlslyst v. Industrial Comm.*, 243 Wis. 612, 614, 11 N.W.2d 179 (1943), an employee who was injured while urinating

off of a moving truck was still entitled to benefits because he was injured while in the course of his employment. In *Theisen v. Industrial Com'n.*, 8 Wis. 2d 144, 154, 98 N.W.2d 446, 451 (1959), assuming that an employee had attempted to bribe witnesses to testify on his behalf at a worker's compensation hearing regarding an alleged work-related injury, the court concluded that as long as there was no legitimate doubt as to the existence of a compensable injury, the employee was still eligible to receive worker's compensation disability benefits. This court quoted the circuit court opinion which stated, "the law prescribes the penalty (for bribery), but denial of compensation, otherwise proper, is not the penalty prescribed." *Theisen*, 8 Wis. 2d at 154.

¶ 26.  As these cases illustrate, an injured employee who has been terminated is nonetheless entitled to disability benefits because the employee continues to be limited by the work-related injury. It is the injury, not the termination, that is the cause of the employee's economic loss. Accordingly, Engel's misrepresentations are of no moment to us unless they are relevant to the extent of his injury. We have concluded that they are not.[2]

¶ 27.  Other jurisdictions maintain the same position. In *Cousins v. Georgia-Pacific Corp.*, 599 A.2d 73 (Me. 1991), an employee was terminated when his employer discovered that although he had called in sick claiming difficulties due to a concededly work-related

---

[2] An unemployment compensation proceeding is the proper forum for a discussion of employee behavior. On February 6, 1992, the Unemployment Compensation Division concluded that Engel was ineligible for unemployment benefits because he was terminated for cause, i.e., for his misrepresentations to his employer about his activities while on disability leave.

injury, he had actually participated in a golf tournament. In this case the Maine court held that, "[A]ssuming that Cousins was terminated for *willful misconduct*, we conclude that circumstance does not of itself preclude the restoration of worker's compensation." *Cousins* at 74.

¶ 28. In Minnesota, *Boryca v. Marvin Lumber & Cedar*, 487 N.W.2d 876 (Minn. 1992), an employee called coworkers and individuals involved in his worker's compensation dispute and threatened to kill himself and others. Although the employee was subsequently fired for this behavior, he was still found eligible for worker's compensation benefits. The court held that, "the (Worker's Compensation) Act does not deprive a worker discharged for misconduct of permanent total compensation for which he would otherwise be eligible." *Boryca*, 487 N.W.2d at 879.

¶ 29. A Florida court held that "(t)he award of wage-loss benefits is not precluded simply because the wage loss, occurring after a period of successful post-injury employment, is attributable in some part to a non-injury-related factor such as economic conditions, seasonal layoff or discharge for a just cause such as excessive absenteeism." *Johnston v. Super Food Services*, 461 So.2d 169, 170 (Fla. Dist. Ct. App. 1984).

¶ 30. The purpose of worker's compensation disability benefits is to compensate employees who have lost the ability to work, temporarily or permanently, due to a work-related injury, regardless of whether they are good or bad employees. It contravenes public policy to allow an employer to avoid paying disability benefits to a disabled employee without evidence that the employee's activities are inconsistent with his or her injury. Without such a requirement, the law would leave employees suffering from legitimate work-

related injuries in grave danger of being left both unemployed and unable to work due to their work-related disability, without compensation and potentially with a lower earning capacity.

¶ 31. In sum, we hold that LIRC's finding that Engel was entitled to temporary disability benefits until April 6, 1992, for his work-related injury is sustained by credible and substantial evidence, and Brakebush failed to submit adequate proof rebutting the extent of Engel's injury. We further hold that the Worker's Compensation Act does not provide an exception to an employer's liability when an employee is terminated for misrepresentations relating to his or her medical condition. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.