Oshkosh Corporation and Lumbermens Mutual
Casualty Company c/o Kemper Services
Company-Broadspire, Plaintiffs-Appellants,

v.

Labor & Industry Review Commission and Daniel
L. Nuetzel, Defendants-Respondents.

Court of Appeals

*No. 2010AP1219. Submitted on briefs December 2, 2010.
—Decided February 23, 2011.*

2011 WI App 42

(Also reported in 796 N.W.2d 217.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David L. Styer* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Anderson and Reilly, JJ.

¶ 1. REILLY, J. Daniel L. Nuetzel injured both of his knees during the course of his employment as an assembler at Oshkosh Corporation. After separate surgeries, he continued to work for Oshkosh with permanent work restrictions. Nuetzel was eventually fired for allegedly sleeping on the job. After Nuetzel was terminated, he applied for vocational rehabilitation benefits pursuant to Wis. Stat. § 102.61 (2009–10).[1]

¶ 2. Oshkosh denied that it was liable for the benefits on a number of grounds. Oshkosh asserted that Nuetzel did not have any physical restrictions that would entitle him to vocational rehabilitation benefits; that it was not liable because it offered Nuetzel "suitable employment" as defined in Wis. Stat. § 102.61(1g) after he injured his knees; and finally that Nuetzel was fired for just cause. Oshkosh also claimed that Nuetzel's Department of Vocational Rehabilitation (DVR) counselor abused her administrative power by ignoring a recommendation that Nuetzel conduct a job search before receiving benefits.

¶ 3. The Administrative Law Judge (ALJ) rejected Oshkosh's arguments and found that Nuetzel was entitled to vocational rehabilitation benefits. Oshkosh appealed to the Labor and Industry Review Commission (LIRC) and LIRC upheld the ALJ's decision.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

The circuit court subsequently affirmed LIRC's decision. Oshkosh appeals to this court.

¶ 4. We affirm the order of the circuit court upholding LIRC's decision. The evidence in the record supports LIRC's conclusion that Nuetzel's prior work injuries require permanent work restrictions. Second, nothing in Wis. Stat. § 102.61(1g) or the Worker's Compensation Act provides that an injured employee can be denied vocational rehabilitation benefits when he is offered suitable employment after his injury and is subsequently fired for just cause. Finally, the record indicates that Nuetzel's DVR counselor did not abuse her administrative discretion. The order of the circuit court is therefore affirmed.

¶ 5. Relevant facts will be delineated in this opinion as we analyze each of Oshkosh's arguments.

## STANDARD OF REVIEW

¶ 6. We review the decision of LIRC, not the circuit court. *See Stoughton Trailers, Inc. v. LIRC*, 2006 WI App 157, ¶ 15, 295 Wis. 2d 750, 721 N.W.2d 102. We defer to LIRC's factual findings unless they are not supported by credible and substantial evidence. *See* Wis. Stat. § 102.23(6). Our role is limited to reviewing the record to determine if credible and substantial evidence supports LIRC's findings. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255 (1975).

¶ 7. In contrast to a finding of fact, an administrative agency's interpretation of a statute is subject to one of three levels of deference. *Milwaukee Symphony Orchestra, Inc. v. DOR*, 2010 WI 33, ¶¶ 32, 34, 324 Wis. 2d 68, 781 N.W.2d 674. The most deferential stan-

266

dard is "great weight" deference. This standard applies when: (1) the agency is charged by the legislature with administering the statute in question; (2) the agency's interpretation is long standing; (3) the agency employed its specialized knowledge or expertise in interpreting the statute; *and* (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*, ¶ 35. Under "great weight" deference, an agency's interpretation of a statute will be sustained even if a court finds another interpretation to be equally or more reasonable. *Id.*

¶ 8.   Below "great weight" deference is "due weight" deference. *Id.*, ¶ 36. This standard applies when the legislature gives the agency the authority to interpret the statute and the agency has experience in the area, but the agency is not in a better position to interpret the statute than the reviewing court. *Id.* When applying "due weight" deference, a court will sustain an agency's interpretation if it is not contrary to the clear meaning of the statute—unless the court determines that a more reasonable interpretation exists. *Id.*

¶ 9.   Finally, a reviewing court owes no deference to an agency's decision when *any* of the following conditions are met:   (1) the issue presents a matter of first impression; (2) the agency has no experience or expertise relevant to the legal issue presented; or (3) the agency's position on the issue has been so inconsistent that it provides no real guidance to the reviewing court. *Id.*, ¶ 37.

¶ 10.   We apply "due weight" deference to LIRC's conclusion that Nuetzel is entitled to vocational reha-

bilitation benefits as LIRC has extensive experience interpreting some provisions of Wis. Stat. § 102.61, but it has limited experience in interpreting § 102.61(1g).[2] It is therefore not in a better position to interpret § 102.61(1g) than this court. Because LIRC—prior to this case—has never addressed the issue of whether an employer is responsible for vocational rehabilitation benefits when an injured employee accepts a job pursuant to § 102.61(1g)(b) and is subsequently fired for just cause, LIRC's interpretation is not "long standing" and thus "great weight" deference is inappropriate. De novo review is also inappropriate because while LIRC has never addressed the issue in this case under § 102.61(1g)(b), it has addressed the issue of vocational rehabilitation benefits for an employee who was fired for just cause.[3] *See Falk v. Cummins Great Lakes, Inc.*, WC Claim No. 1995034834 (LIRC July 6, 2001); *Gasper v. Wismarq Corp.*, WC Claim No. 94067858 (LIRC Feb. 24, 1998). Applying "due weight" deference, we affirm LIRC's decision unless we find that it is contrary to the clear meaning of § 102.61(1g) or we find that a more reasonable interpretation exists.

## BACKGROUND

¶ 11.  From 1983–2006, Nuetzel worked as an assembler at Oshkosh. In October 2000, Nuetzel injured his left knee at work, requiring surgery. Nuetzel re-

---

[2] Aside from this case, LIRC's only experience with Wis. Stat. § 102.61(1g) was in the context of whether an employer made an offer of employment "in writing" as required by § 102.61(1g)(c). *See Gibbs v. Stoughton Trailers, LLC*, WC Claim No. 2005–015799 (LIRC Nov. 6, 2008).

[3] Wisconsin Stat. § 102.61(1g) was not created until 2002. *See* 2001 Wis. Act 37, § 45.

turned to work and subsequently injured his right knee at work in October 2002, which also required surgery. After each surgery, Nuetzel's treating physicians imposed work restrictions on Nuetzel that limited the amount of physical labor he could do when he returned to work at Oshkosh.

¶ 12. Nuetzel was fired by Oshkosh on April 27, 2006, for allegedly sleeping on the job. Nuetzel thereafter applied for retraining assistance from the DVR. After Nuetzel's DVR counselor found him eligible for retraining benefits, Nuetzel began taking classes at Fox Valley Technical College. Nuetzel filed an application for vocational rehabilitation benefits under WIS. STAT. § 102.61.

## *LIRC Appropriately Concluded That Nuetzel Has Permanent Work Restrictions*

¶ 13. Oshkosh first argues that the medical evidence in the record does not support LIRC's finding that Nuetzel has permanent work restrictions. At the hearing before the ALJ, Nuetzel presented the reports of his treating physicians who both stated that Nuetzel required permanent physical work restrictions as a result of his two knee surgeries. Oshkosh presented the reports of its two independent medical examiners, one of whom opined that Nuetzel was partially disabled in his left knee from the 2000 injury, and the second who opined that Nuetzel did not have any work restrictions. The ALJ examined the competing evidence and concluded that Nuetzel had permanent work restrictions.

¶ 14. LIRC found that the record supported the ALJ's conclusion that Nuetzel's knee surgeries left him with permanent work restrictions. *Nuetzel v. Oshkosh*

*Truck Corp.*, WC Claim No. 2000–056121 (LIRC Sept. 28, 2009). LIRC noted that it was perfectly reasonable for the ALJ to concur with the opinions of Nuetzel's treating physicians rather than one of Oshkosh's independent medical examiners. *Id.* We agree that there is credible and substantial evidence to support LIRC's conclusion that Nuetzel requires permanent work restrictions. Of the four physicians who examined Nuetzel, only one concluded that he does not require any permanent work restrictions. The record supports LIRC's conclusion.

### Wisconsin Stat. § 102.61(1g) Does Not Bar Nuetzel From Receiving Vocational Rehabilitation Benefits

¶ 15. Oshkosh next argues that as it offered Nuetzel "suitable employment" under Wis. Stat. § 102.61(1g) after his second work injury, and as Nuetzel thereafter lost his job for just cause, that it is not liable for vocational rehabilitation benefits.[4] Oshkosh argues that if Nuetzel was not sleeping on the job, he would not have been fired and thus would not require vocational rehabilitation benefits. The ALJ noted that LIRC has previously rejected such arguments, although in different circumstances. In *Gasper*, LIRC stated that "there is nothing in Chapter 102, or elsewhere in the

---

[4] Wis. Stat. § 102.61(1g)(b) states that "[i]f an employer offers an employee suitable employment as provided in par. (c), the employer or the employer's insurance carrier is not liable for temporary disability benefits under s. 102.43(5) . . . ." "Suitable employment" is defined as "employment that is within an employee's permanent work restrictions, that the employee has the necessary physical capacity, knowledge, transferable skills, and ability to perform, and that pays not less than 90% of the employee's preinjury average weekly wage." Section 102.61(1g)(a).

law, which provides that vocational rehabilitation benefits may be denied because an individual was discharged for cause." *Gasper*, WC Claim No. 94067858; *see also Falk*, WC Claim No. 1995034834 (concluding that LIRC has no "discretionary authority to deny vocational rehabilitation benefits" when an employee is fired for just cause).

¶ 16. In *Brakebush Bros., Inc. v. LIRC*, 210 Wis. 2d 623, 635, 563 N.W.2d 512 (1997), the Wisconsin Supreme Court held that Chapter 102 of the Worker's Compensation Act does not provide an exception to employer liability for disability benefits when an employee is fired for misrepresenting the extent of his injuries. In that case, Richard Engel injured his back while working at Brakebush and was temporarily unable to work. *Id.* at 626. While he was collecting disability benefits, Brakebush discovered that Engel had been bow hunting and playing pool, a fact he did not disclose to Brakebush or his doctors. *Id.* Brakebush fired Engel for gross misconduct. *Id.* at 627. The court held that "an injured employee who has been terminated is nonetheless entitled to disability benefits because the employee continues to be limited by the work-related injury. It is the injury, not the termination, that is the cause of the employee's economic loss." *Id.* at 635. Furthermore, "[t]he purpose of worker's compensation disability benefits is to compensate employees who have lost the ability to work, temporarily or permanently, due to a work-related injury, regardless of whether they are good or bad employees." *Id.* at 636; *see also Emmpak Foods, Inc. v. LIRC*, 2007 WI App 164, ¶ 14, 303 Wis. 2d 771, 737 N.W.2d 60 (holding that the Worker's Compensation Act did not allow an employer to avoid liability for disability benefits even when the employee was fired for just cause).

¶ 17. Oshkosh's argument that Wɪs. Sᴛᴀᴛ. § 102.61(1g) precludes an award of vocational rehabilitation benefits because Oshkosh offered Nuetzel "suitable employment" after each of Nuetzel's two knee injuries also fails. Neither party disputes that Nuetzel was offered suitable employment. The ALJ ruled that *Gasper* and *Falk* controlled and that Nuetzel could not be denied benefits for allegedly sleeping on the job. LIRC concurred that the ALJ properly applied § 102.61(1g), and we affirm LIRC's conclusion that Nuetzel is entitled to vocational rehabilitation benefits. It is the injury sustained by the employee and not the employee's acts that underlies the principles in § 102.61(1g).

*Nuetzel's DVR Counselor*
*Did Not Abuse Her Administrative Power*

¶ 18. Finally, Oshkosh argues that Nuetzel's DVR counselor abused her administrative power because she did not follow the recommendation of a vocational specialist who recommended that Nuetzel first conduct a job search before taking classes at Fox Valley Technical College. The ALJ found that the DVR counselor did not abuse her administrative power as the DVR no longer requires an injured worker to perform a job search before he can apply for retraining benefits, and that Nuetzel had already conducted his own job search before he applied for benefits through the DVR. LIRC affirmed the ALJ's finding. We likewise hold that that there was no abuse of administrative power by Nuetzel's DVR counselor.

## CONCLUSION

¶ 19. We affirm the order of the circuit court upholding LIRC's decision.

*By the Court.*—Order affirmed.