E. F. BREWER COMPANY, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

*No. 75–857. Submitted on briefs January 5, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N.W.2d 222.)

For appellants the cause was submitted on the briefs of *Carl N. Otjen* and *Otjen, Philipp & Van Ert, S. C.* of Milwaukee.

For respondent, Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

HEFFERNAN, J. This is a worker's compensation case. Eugene Arndt, an employee of E. F. Brewer Company, claimed that he sustained a hernia while at work as a brazier. Following a hearing before an examiner of the Department of Industry, Labor and Human Relations (DILHR), the injury was held to be compensable.

The employer and the insurance carrier petitioned for department review of the examiner's findings and order. By order dated May 22, 1975, the examiner's findings and order of compensability were affirmed. An action for review was commenced in the circuit court for Dane county. The court affirmed the DILHR order on the grounds that there was sufficient evidence to sustain the findings and departmental order. Judgment was entered on April 12, 1976, and the appeal is from that judgment.

The only question on this appeal is whether there is any credible evidence to support the department's finding that the injury was compensable. The department found that Arndt sustained a compensable injury on June 10, 1974, which temporarily disabled him from work for a period of six weeks and three days.

The test to be used in reviewing the sufficiency of evidence to support findings in a worker's compensation case was stated in *R. T. Madden, Inc. v. DILHR*, 43 Wis. 2d 528, 169 N.W.2d 73 (1969). The court said:

"It is our conclusion the test should be whether there is any credible evidence in the record sufficient to support the finding made by the department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law. This is clearly not the same as a reviewing court's weighing conflicting evidence to determine what shall be believed." (at 547)

Under this test, a court upon review will affirm the findings of DILHR if there is any credible evidence to sustain those findings. The fact that the evidence is in conflict is not a sufficient basis for the reversal of the findings of the department. Even were we to conclude on review that the findings of the department were contrary to the great weight and clear preponderance of the evidence, it would be beyond our jurisdiction to reverse, for, on review, we do not determine whether findings that were not made should have been made or could have been sustained by the evidence. We are confined to the determination of whether there was any credible evidence to sustain the findings that were in fact made. *Unruh v. Industrial Comm.*, 8 Wis.2d 394, 99 N.W.2d 182 (1959).

Moreover, it is the function of the department, and not of this court, to determine the credibility of evidence or

of witnesses, and it is for the department to weigh the evidence and to decide what should be believed. *R. T. Madden, supra,* at 547. Conflicts in testimony of medical witnesses are to be resolved by the department, and a determination of the department that the testimony of one qualified medical witness rather than the testimony of another is to be believed is conclusive. *Consolidated Papers, Inc. v. DILHR,* 76 Wis.2d 210, 219, 251 N.W.2d 69 (1977) ; *Kohler Co. v. DILHR,* 81 Wis.2d 11, 259 N.W. 2d 695 (1977) ; *Swiss Colony, Inc. v. DILHR,* 72 Wis.2d 46, 56, 240 N.W.2d 128 (1976).

The testimony of the applicant Arndt revealed that he was engaged in either lifting or pushing a 75 pound pan of material "when I felt kind of a sharp pain." Dr. George M. Daley filed a WC–16–B report with the department. That report showed that the date of accident was June 10, 1974, and that Arndt was lifting a pan of material when he first felt a pulling sensation and pain. The injury sustained, according to the physician's report, was an inguinal hernia. As a portion of the report, the doctor gave the opinion that the accident sustained by Arndt directly caused the disability.

These two items of evidence—the testimony of the applicant and the report of the physician—are sufficient to support the award of compensation. The applicant's statement is, doubtless, self-serving and the physician's report in respect to the circumstances of the initial injury and pain is but a recapitulation of the applicant's self-serving statement. Nevertheless, these sources of evidence, together with the physician's opinion, tend to prove that the plaintiff sustained a sharp pain while lifting or pushing a pan of heavy material in connection with his work and that the disability was an inguinal hernia, which was directly caused by the applicant's work.

While it is clear from the record and briefs in this case that an inguinal hernia usually, if not invariably,

occurs only where there is a pre-existing congenital weakness, we have frequently stated that an employer takes an employee in the state of health or physical condition "as is." If the work activity precipitates disability, even though that disability would not have been caused in the absence of congenital weakness, the disability may be compensable.

This theory of compensation for the aggravation or the precipitation of disability, although based on preexisting or congenital conditions, is summarized in *Lewellyn v. DILHR,* 38 Wis.2d 43, 58–9, 155 N.W.2d 678 (1968):

"(1) If there is a definite 'breakage' (a letting go, a structural change etc., as described by Professor Larson), while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. *Brown v. Industrial Comm., supra,* and *Indianhead Truck Lines v. Industrial Comm., supra.*

"(2) If the employee is engaged in normal exertive activity but there is no definite 'breakage' or demonstrable physical change occurring at that time but only a manifestation of a definitely preexisting condition of a progressively deteriorating nature, recovery should be denied even if the manifestation or symptomization of the condition became apparent during normal employment activity. *Shawley v. Industrial Comm., supra; Van Valin v. Industrial Comm., supra;* and Currie, 37 Wis. Bar Bulletin 7.

"(3) If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite 'breakage.' *Shawley v. Industrial Comm., supra;* Currie, 37 Wis. Bar Bulletin 7."

The employee's testimony of a sudden sharp pain at the time he alleged the injury took place is consistent

with the breakage theory of compensation; and if his testimony was believed, as it clearly was by the examiner and the department, the relationship of the injury and the disability to the applicant's work was established. Only if the applicant's testimony and the physician's report were incredible as a matter of law would we be able to conclude that the findings of fact and order for compensation were unsupported.

There indeed was contrary evidence. Dr. Samuel A. Graziano testified at the hearing that, when he examined Arndt in September of 1974, Arndt told him that he had a bulge—indicating the presence of an inguinal hernia—for about eight months. If credence were given to this testimony, the inguinal hernia antedated the work-related incident by five or six months. Such evidence, if given full credence, would be inconsistent with the employee's claim of work-connected disability. In addition, the consultation report of Dr. Daley, the same physician who submitted the WC–16–B report, indicated that Arndt had the bulge for the past year. Either of these statements would be sufficient to cast doubt upon the credibility of the evidence upon which the findings in favor of the applicant were made.

The examiner of the department, however, chose to disbelieve those statements, and the fact that the department could have given credence to those items of evidence which tended to rebut a compensable work-related incident is irrelevant. This was simply a matter of credibility. In the absence of any of the evidence being incredible as a matter of law, the department could believe whatever portion of the evidence it thought credible.

Once a reviewing court concludes that there was credible evidence upon which findings can be based, the court's jurisdiction in that respect is at an end.

Because the findings of fact are supported by credible evidence, the orders of the examiner and of the depart-

ment and the subsequent judgment of the circuit court must be affirmed.

An additional element has been appropriately injected into the appeal by the applicant's employer and insurance company. They pointed out to the trial court, as they do to us, that the department totally ignored guidelines which were established by the Industrial Commission more than sixty years ago to be applied in cases involving claims for compensation for inguinal hernia. The basic philosophy of the guidelines is that indirect inguinal hernias are highly unlikely to occur during the course of employment, and when they do occur, the trauma and the subsequent pain are so acute that predictable types of conduct by the injured claimant almost inevitably and immediately ensue. When such conduct does not occur, the existence of work-caused inguinal hernia is highly suspect.

These guidelines were first recognized by this court in *Meade v. Wisconsin Motor Manufacturing Co.*, 168 Wis. 250, 169 N.W. 619 (1918). Further discussion of the guidelines has appeared in *McCarthy v. Sawyer-Goodman Co.*, 194 Wis. 198, 215 N.W. 824 (1927); *Prentiss Wabers Products Co. v. Industrial Comm.*, 230 Wis. 171, 283 N.W. 357 (1939); *Davis v. Industrial Comm.*, 22 Wis. 2d 674, 126 N.W.2d 611 (1964); *Brown v. Industrial Comm.*, 9 Wis.2d 555, 101 N.W.2d 788 (1960); and *Anheuser Busch, Inc. v. Industrial Comm.*, 29 Wis.2d 685, 139 N.W.2d 652 (1966).

In general, these cases demonstrate that the Industrial Commission, for some time prior to the *Meade* case, used internal decisional guidelines which the commission deemed would tend to do justice between the parties by insuring that claims for disability for work-related inguinal hernias were supported by sufficient proof. These commission guidelines were restated in *Meade, supra:*

" ' . . . To require definite proof that the hernia was produced by accident; . . . that the accident was such as could produce a hernia; that the hernia appeared immediately after the accident; that it was followed by pain immediately disabling the applicant.' " (at 252)

It is undisputed and conceded that, in the instant case, no weight whatsoever was given to these guidelines, or to the guidelines as subsequently expanded, in determining whether or not Arndt's claimed injury was compensable. In the instant case, while there was evidence to show that Arndt felt pain at the time of the claimed incident, that pain was not severe enough to cause even a temporary cessation of the work. No comments were made by the applicant to fellow workmen at the time of the incident. There was no immediate report to the employer. There was no immediate disability such as sickness or nausea. The applicant did not, because of the alleged injury, feel compelled to examine himself immediately. He did not seek immediate medical attention. His work was not limited until the time he had the surgery for the repair of the hernia.

It seems clear that the department completely ignored its own guidelines, which this court, since at least 1918, has denominated as not unreasonable. Had the department followed the guidelines as restated in the cases cited above and denied compensation, we might well have concluded that the department's finding that no compensable accident occurred would have to be sustained. There indeed is evidence of record which, in light of the guidelines, would show no compensable injury had been sustained. The department might well have relied upon the evidence that tended to show the absence even of a traumatic culmination by a herniation at the point of congenital weakness. It is equally clear that there was evidence, if believed, that was sufficient for the department to deny compensation, even in the absence of the guidelines, for

there was some evidence, if deemed credible, to show that the hernia had pre-existed the alleged work incident.

The guidelines are, however, irrelevant to our review of the findings by the department. From the very first case, *Meade, supra,* it is apparent that the guidelines were formulated as internal standards of credibility. We said in *Meade,* in respect to the guidelines, that "We cannot say that these requirements are not reasonable . . . ." (at 252) Even in *Meade* we based our affirmance of the commission, not on the guidelines, but upon:

"A consideration of the evidentiary facts in the light of their natural and proper relations consistent with common sense and experience [which] shows they permit of different inferences in arriving at the ultimate fact as to whether or not the alleged accident was the proximate cause of the hernia of which the plaintiff complains." (at 252)

In *McCarthy, supra,* we again affirmed the use of the guidelines on the grounds that the commission was at liberty to disregard even the testimony of experts if that testimony was contrary to the commission's expert knowledge.

In *Prentiss Wabers, supra,* we specifically held that the guidelines of the commission were not pronouncements of law having a binding effect in respect to what constitutes adequate proof of traumatic hernia. We said in that case:

"Upon appeal from an award of the commission the question to be determined by this court is whether there is any credible evidence to sustain the findings of the commission, not whether the findings conform to some standard of proof previously set up by the commission." (at 176)

The cases subsequent to *Prentiss Wabers,* cited above, utilized language to the same effect. From the language of all the cases which have dealt with the guidelines, it

is apparent that this court viewed the guidelines as standards only for the internal use of the commission or department by which the credibility or the probativeness of testimony could be tested.

We have said that, in view of our recognition of the fact that inguinal hernias are not *likely* to occur from work-related incidents, it was not unreasonable to test the truth of the assertions made in light of these standards. In no case, however, has this court either affirmed or reversed the commission or department because of its compliance or noncompliance with all or a part of those standards. In each case the court went to the central issue: Was there any credible evidence to sustain the findings. What we have said in these cases is that the department and its examiners may use these standards as an aid in determining credibility, but this is the business of the department and not of the courts. If, by using the standards, they conclude that evidence is credible, this court is bound by that determination. Similarly, we are bound by their determination that evidence is incredible, irrespective of what standard or guideline they use to determine credibility, so long as credence is not given to evidence which is incredible as a matter of law.

In the instant case, there is no evidence that the guidelines were utilized; and it is apparent that, in view of past history, had the guidelines been utilized, the department could have found the evidence incredible under those standards, but they did not find incredible the evidence which was sufficient to sustain the award. Rather, that evidence was believed. Because that evidence was sufficient and not incredible as a matter of law, we are obliged to affirm the findings and order of the department and the judgment of the circuit court, which affirmed the departmental action.

*By the Court.*—Judgment affirmed.