PATRICK CUDAHY INCORPORATED, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION
and Daryl Cross, Defendants-Respondents.

Court of Appeals

*No. 2005AP2074. Submitted on briefs August 2, 2006.
—Decided September 26, 2006.*

2006 WI App 211

(Also reported in 723 N.W.2d 756.)

752

754

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy G. Costello* and *Daniel J. Finerty* of *Krukowski & Costello, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William S. Sample*, Labor and Industry Review Commission.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J.   Patrick Cudahy Incorporated ("Cudahy") appeals from an order, entered June 29, 2005, affirming the decision by the Labor and Industry Review Commission ("LIRC") to reinstate Daryl Cross's ("Cross") unemployment benefits, finding that Cross's violation of a last chance agreement to not use alcohol or illegal drugs on or off the job was not misconduct as defined under *Boynton Cab Co. v. Neubeck & Industrial Commission*, 237 Wis. 249, 296 N.W. 636 (1941) and *Gregory v. Anderson*, 14 Wis. 2d 130, 109 N.W.2d 675 (1961). Because we determine, after a review of the record, that Cross's actions constituted a violation of an employer rule concerning off-duty conduct and that this rule was rationally related to the employer's business interest, we conclude that Cross's conduct was misconduct. We reverse the decision of LIRC, and the decision of the trial court which affirmed the LIRC decision.

## BACKGROUND

¶ 2.   Cudahy is a meat-processing company. Cross worked for Cudahy for approximately two years and eight months. At least part of his job included operating a "high rise" material handling truck. At the time of his discharge, Cross worked the 12:00 a.m. to 8:30 a.m. shift. On May 28, 2004, Cross hit one of his co-workers with

his truck, injuring the other employee. Pursuant to Cudahy's safety policies, Cross was given a drug test promptly following the incident and was found to have had cocaine metabolites in his system. On June 9, 2004, Cross met with a Human Resources representative and Cross's supervisor regarding both Cross's excessive absences[1] and the positive finding of cocaine. As a result of the positive cocaine test, Cross was allowed to continue his employment with Cudahy only if he agreed to participate in an Employee Assistance Program (EAP), which included attending a substance abuse course. In order for Cross to avoid discharge and be eligible for the EAP program, Human Resources had to modify Cross's number of points relating to unexcused absences. On June 10, 2004, Cross signed a "last chance agreement" presented to him by an EAP nurse. The last chance agreement process for dealing with substance abuse was a negotiated provision of the collective bargaining agreement between Cudahy and the union.[2] The last chance agreement stated:

> You have recently entered our Employee Assistance Program in conjunction with United Health . . . . This Program has been made available to you as a . . . "last

[1] Cudahy's vice president for Human Resources testified that Cross was "up for discharge for the fourth time for poor attendance."

[2] Section 20.02 of the Collective Bargaining Agreement between Cudahy and United Food & Commercial Workers International Union, AFL-CIO & CLC Local 73–A, effective November 17, 2003 through December 31, 2008, reads, in pertinent part:

Drug and Alcohol Abuse Program

(A) The Company and Union agree that a drug-free working environment at the Company is a high priority objective. It is vitally important to safety, productivity and the general welfare of all concerned. Therefore, if the Company has reasonable cause to believe (including . . . involvement in a major plant accident . . .)

757

chance" benefit of Patrick Cudahy Incorporated. The following stipulations will be in force on 6–10–04.

1.  You will be subject to unannounced substance abuse blood and/or urine screening for a period of two years, to assure that you do not ever again use same.

2.  You must participate in and continue in the prescribed rehabilitation program for its duration, and complete a Medical Release Form designating that information be released to the Patrick Cudahy Medical Department regarding your after-care and treatment.

*Therefore the following grounds,* in addition to any other serious misconduct, *will be cause for immediate dismissal* from employment at Patrick Cudahy.

that an employee may be under the influence of drugs or alcohol, the employee will be requested to promptly submit to a medical examination at the Employee Health Department or an authorized testing facility.

. . . .

(E) Test Results and Discipline

. . . .

(3) *If any confirmed positive test result is the employee's first offense, he* may be disciplined and *will be required to participate in the Company's Employee Assistance Program and attend a prescribed rehabilitation program.* If any confirmed positive result is the employee's second offense, the employee will be discharged, as will any employee who refuses to participate in the Assistance Program.

(4) Any employee who participates in the Employee Assistance Program after a first offense will be subject to unannounced medical examinations and urine and/or blood screens during the first two (2) years of rehabilitation only. Any confirmed positive result from the unannounced test(s) will constitute grounds for immediate dismissal.

(Emphasis added.)

758

1.  *A voluntary admission of continued use of and/or a positive substance abuse test for drugs and/or alcohol.*

2.  Failure to participate and continue in your established after-care program for its duration.

(Emphasis added.) In signing the last chance agreement, Cross acknowledged that he "fully underst[ood] and agree[d] to comply" with the above noted information and that he "personally guarantee[d] that [he] will never again use illegal drugs and/or alcohol as long as [he is] employed at Patrick Cudahy."

¶ 3.   On July 16, 2004, Cross had his first substance abuse class which lasted from 8:30 a.m. to 1:00 p.m. On his shift following that class, at approximately 1:30 a.m. on July 17, Cross was approached by his supervisor Rubin Munus because of Cross's slowness in loading his assigned truck. When Cross asked to speak with Munus privately, Munus smelled alcohol on Cross's breath and asked Cross if he had been drinking. Cross admitted that he had had two beers at about 4:00 p.m. on July 16, 2004. Munus sent Cross home from the shift.

¶ 4.   On July 22, 2004, Cross met with Munus and a vice president of Human Resources. At that meeting Cross admitted that he had drunk beer twice since signing the last chance agreement six weeks earlier:   once a twelve pack on a Saturday evening in June and the two beers in the afternoon before his midnight shift on July 17, 2004. At the hearing before the Appeal Tribunal, Cross denied drinking any alcohol after signing the last chance agreement and asserted that he had lied when he had told Human Resources that he had drunk alcohol. Cudahy discharged Cross on July 22, 2004.

## Standard of Review

¶ 5.   At issue in this case is whether the work rule agreed to by Cudahy and the union, *i.e.,* the last chance agreement and its absolute ban on Cross's consuming alcohol, is reasonably related to the employer's business interest of safety in the workplace. If so, Cross's violation of that work rule was misconduct under WIS. STAT. § 108.04(5) (2003–04).[3] For purposes of this appeal, we review LIRC's decision and not the decision of the circuit court. *See Stafford Trucking, Inc. v. DILHR,* 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). This issue requires interpretation of Wisconsin's unemployment compensation statutes. When reviewing a decision of an administrative agency such as LIRC, a "court may . . . set aside such order or award . . . only upon the following grounds:

1.   That [LIRC] acted without or in excess of its powers.

2.   That the award was procured by fraud.

3.   That the findings of fact by [LIRC] do not support the order or award."

WIS. STAT. § 102.23(1)(e); *see also Eaton Corp. v. LIRC,* 122 Wis. 2d 704, 708, 364 N.W.2d 172 (Ct. App. 1985).

¶ 6.   Cudahy argues only "that LIRC acted without or in excess of its power by finding that Cross was terminated by Cudahy but that his actions did not amount to misconduct; i.e., an intentional and substan-

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

tial disregard of Cudahy's interests." That is, Cudahy argues that LIRC's legal conclusions based on its findings of fact are incorrect.

¶ 7. "LIRC's factual findings are binding on this court." *DILHR v. LIRC*, 155 Wis. 2d 256, 262, 456 N.W.2d 162 (Ct. App. 1990). In this case, the facts are not in dispute. The union and Cudahy have a contract that includes the last chance provisions applied here. Cross signed a last chance agreement to avoid discharge after testing positive for cocaine metabolites in his system following his involvement in a workplace accident in which a co-worker was injured by Cross while Cross was operating a "high rise" material handling truck. Cross admitted to violating the terms of the last chance agreement twice within the first six weeks after signing it. Cross admitted he consumed alcohol before coming to work on July 17 at 12:00 a.m. A supervisor smelled alcohol on his breath. Cudahy discharged Cross for violation of the last chance agreement.

¶ 8. "[A] court is not bound by an agency's interpretation of a statute." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). However, "[e]ven though we are not bound by LIRC's statutory interpretation, we consider whether the circumstances of the case warrant deference to its interpretation." *Brauneis v. LIRC*, 2000 WI 69, ¶ 15, 236 Wis. 2d 27, 612 N.W.2d 635. Accordingly, LIRC's determination of whether an employee engaged in misconduct under WIS. STAT. § 108.04(5) is a legal conclusion which we review *de novo* but give appropriate deference. *See Brauneis*, 236 Wis. 2d 27, ¶ 15.

761

¶ 9.    This court generally applies one of three standards of review, with varying degrees of deference, when reviewing an agency's legal conclusions under a statute: great weight deference, due weight deference or *de novo* review. *Labor Ready, Inc. v. LIRC*, 2005 WI App 153, ¶ 9, 285 Wis. 2d 506, 702 N.W.2d 27. A court must give great weight deference to LIRC's legal conclusions if all of the following apply to the case being reviewed:

1.    "the agency was charged by the legislature with the duty of administering the statute";
2.    the agency's interpretation is one of longstanding;
3.    "the agency employed its expertise or specialized knowledge in forming the interpretation"; and
4.    the agency's interpretation will provide uniformity and consistency in applying the statute.

*Harnischfeger*, 196 Wis. 2d at 660. Only due weight deference may be required, however, if all four of the above standards are not met. *Id.* at 660 n.4. A reviewing court under due weight deference "need not defer to an agency's interpretation which while reasonable, is not the interpretation which the court considers best and most reasonable." *Id.*; *see also Margoles v. LIRC*, 221 Wis. 2d 260, 265 n.3, 585 N.W.2d (Ct. App. 1998) (holding that under a due weight deference standard, "a more reasonable interpretation overcomes an agency interpretation").

¶ 10.    Cudahy argues that LIRC's decision in this case is only entitled to due weight deference because (1) LIRC "did not correctly apply the *Gregory* holding" and (2) "LIRC's *Cross* decision does not provide uniformity and consistency in [the] application of the misconduct portion of the statute," specifically as relates to

misconduct and safety-related business interests. LIRC argues that its decision is entitled to great weight deference because it has "employed the expertise, specialized knowledge, and technical competence it has developed in deciding thousands of 'misconduct' cases," including "significant experience deciding *Gregory* cases" and in "analysis of evidence of the use of controlled substances in particular."

¶ 11. In applying the four *Harnischfeger* standards to this case, LIRC fulfills the first requirement in that it is charged with administering WIS. STAT. § 108.04(5). *See* WIS. STAT. § 108.09(6). LIRC's interpretation of WIS. STAT. § 108.04(5) is also longstanding,[4] but not necessarily consistent. *See, e.g., Boynton Cab Co.*, 237 Wis. 2d at 259–60. While LIRC has applied its expertise and specialized knowledge to numerous misconduct cases, we find from a review of misconduct cases relating to alcohol and drug-related behaviors that LIRC's decisions may have led to a non-uniform or inconsistent application of the law of misconduct.[5]

---

[4] Review of LIRC decisions regarding drug and alcohol policy violations and misconduct provided more than twenty cases decided between 1988 and 2005.

[5] Review of LIRC's alcohol and drug misconduct cases shows decisions in essentially the following categories:

 1. Prohibition of all off-duty illegal drug use. LIRC has almost uniformly held that this prohibition is rationally related to an employer's business interest and has found misconduct, both for a first offense and after a "final warning" or last chance agreement pursuant to the employer policy (see footnote 6, *infra*). *See, e.g., Armstrong v. Emmpak Foods, Inc.*, Hearing No. 01605775MW (LIRC Nov. 29, 2001) (misconduct where employer drug policy allowed for final warning, employee first tested positive for cocaine and marijuana; second test approximately three months later was positive for cocaine); *Osness v.*

Therefore, we conclude that this decision is entitled only to due weight deference.

> *Aurora Pharmacy, Inc.,* Hearing No. 04608041MW (LIRC Dec. 10, 2004) (misconduct where employee tested positive for marijuana; entered into last chance agreement and subsequently tested positive for marijuana).

2. Prohibition of having any "detectable alcohol" in system when reporting to or while at work. Misconduct found after first offense where employer's policy prohibited employees from reporting to work, or working, with any detectable alcohol in their system and employee reported to work with a blood alcohol level of .11. *See McClary v. AACER Flooring LLC,* Hearing No. 02403673AP (May 15, 2003) (LIRC found that because employee operated dangerous machinery, employer had established a valid business reason, "the health and safety of its workers, for its implicit regulation of off-duty alcohol consumption").

3. Alcohol followed by illegal drugs. Misconduct where first offense is for alcohol, last chance agreement prohibits using alcohol or drugs, and second offense is for drugs. *See, e.g., Olson v. Distrib. Transformer Div.,* Hearing No. 88–603167WK (LIRC Feb. 3, 1989).

4. Alcohol followed by alcohol. If first offense is for alcohol and so is second after last chance agreement (both showing impairment on the job), results are inconsistent. Misconduct found when agreement is limited in scope (one or two years of random testing). *See, e.g., Blanke v. Weyerhaeuser Co.,* Hearing No. 98402329MN (LIRC Feb. 18, 1999) (Not misconduct when thirty-year employee violated a return-to-work agreement by drinking alcohol.); *c.f., Butterfield v. Covenant Healthcare Sys., Inc.,* Hearing No. 0500251MW (LIRC July 28, 2005) (Last chance agreements banning any use of alcohol reasonable when specific employee had a long-standing addiction issue and his sobriety was necessary to insure his ability to work for the employer at all.).

5. Illegal drugs followed by alcohol. Where first offense is for drugs and employee is given a last chance agreement which has a total prohibition on consuming alcohol or drugs for duration of employment, and second offense is for alcohol. LIRC found no misconduct. *See Patrick Cudahy v. LIRC,* Hearing No. 04607767MW (LIRC Dec. 3, 2004).

764

¶ 12.   In determining whether Cross's violation of the last chance agreement is misconduct, the court must look to the two leading cases: *Boynton Cab Co. v. Neubeck & Industrial Commission*, 237 Wis. 249, 296 N.W. 636 (1941) and *Gregory v. Anderson*, 14 Wis. 2d 130, 109 N.W.2d 675 (1961). For an employee's conduct to constitute misconduct, it must be:

> [C]onduct evincing such wil[l]ful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee . . . an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer . . . . [M]ere inefficiency, unsatisfactory conduct, failure in good performance . . . or ordinary negligence in isolated instances, or good-faith errors in judgment . . . are not to be deemed 'misconduct' within the meaning of the statute.

*Boynton Cab Co.*, 237 Wis. at 259–60. However, when the work rule involved seeks to regulate off-duty conduct, an employee's actions, which may be misconduct under the *Boynton Cab Co.* standard, may not be considered misconduct for unemployment compensation purposes unless the employer can prove that the work rule violated *was reasonably related to the employer's business interest. Gregory*, 14 Wis. 2d at 137.

¶ 13.   In *Gregory*, a vending machine service company had difficulty obtaining business auto liability insurance because its drivers serviced taverns and there was a concern that this would lead to driving under the influence. *Id.* at 132. The employer obtained insurance by agreeing to employ only drivers who did not, or agreed to not, drink alcohol at any time. *Id.* at 132–33. When the employee began his employment, he was

required to take the no-drink pledge as a condition of employment. *Id.* at 133. After being arrested for driving while intoxicated, the employer and employee entered into a "last chance" agreement, wherein the employee agreed that if he drank alcohol again, either on or off duty, he would be discharged. *Id.* at 133–34. He again drank alcohol and was discharged. *Id.* at 134. LIRC found that the employee's violation of the last chance agreement constituted misconduct and that the work rule involving off-duty conduct was reasonably related to the employer's interest of obtaining business auto liability insurance, and this court affirmed. *Id.* at 140.

**Misconduct**

¶ 14.   The first question is whether Cross's violation of the last chance agreement constituted misconduct. Cudahy views Cross's violation of his last chance agreement twice within the first six weeks after he signed the agreement as misconduct. Cudahy argues that the purpose of the last chance agreement was to prevent safety-related concerns. They argue these concerns are particularly acute when faced with an employee who operates a material handling truck on the job, and who tested positive for cocaine metabolites immediately after injuring a co-worker in an accident involving the truck the employee was operating.

¶ 15.   LIRC has sustained a misconduct termination after the first use of illegal drugs in the workplace,[6] and found that an employer rule prohibiting all use of

---

[6] *Bartosh v. Motion Indus., Inc.*, Hearing No. 02201209EC (LIRC Sept. 19, 2002) (driver discharged after first offense testing positive for marijuana); *Hein v. Cameo Care Ctr., Inc.*, Hearing No. 02603347MW (LIRC Sept. 6, 2002) (discharged for first offense testing positive for marijuana); *McMillan v. Asplundh Tree Expert Co.*, Hearing No. 96200284EC (LIRC

illegal drugs bore "a reasonable relationship to the employer's interests." *Gregory*, 14 Wis. 2d at 137. LIRC also found misconduct where the first offense leading to a last chance agreement was alcohol-related and the second, discharging offense, was an illegal drug. *Olson v. Distrib. Transformer Div.*, Hearing No. 88–603167WK (LIRC Feb. 3, 1989). We discern no logical basis for a different conclusion of law—finding no misconduct—simply because of the sequence of the consumption of the agreed upon prohibited substance. Further, in *Olson*, in support of its finding of misconduct, LIRC noted:

> [I]t is well known that alcohol and drug abuse, may accompany each other. The employer was acting reasonably by setting strict conditions of reinstatement, because the employe had allowed off-duty consumption of an intoxicant to interfere with his work. This presented serious safety concerns for the employer, and an individual's failure to control his consumption of one intoxicant leads to the reasonable inference that such individual may fail to control his consumption of other intoxicants.

*Olson*, Hearing No. 88–603167WK (LIRC Feb. 3, 1989) at 2. LIRC does not explain why its finding in *Olson* is not equally applicable here.

¶ 16.   LIRC concluded that if Cudahy's work rule had been limited to prohibiting all use of *illegal* drugs, based on Cross's previous positive test for cocaine metabolites, then only Cross's subsequent use of *illegal*

---

Sept. 4, 1996) (tree trimmer who required commercial driver's license discharged after first offense testing positive for marijuana); *Adams v. Penda Corp.*, Hearing No. 95002425BO (LIRC Aug. 18, 1995) (employee drug tested after being injured at work; discharged after first offense testing positive for marijuana).

767

drugs would have constituted misconduct. That conclusion is not consistent with prior LIRC decisions as described above.

¶ 17. LIRC has been inconsistent regarding use of drugs (alcohol and controlled substances) in or outside the workplace and whether such use constitutes misconduct justifying termination. In this case, Cross's "first offense" was having cocaine metabolites in his system. LIRC has upheld the finding of misconduct on an employee's first identified use of illegal drugs when the employee was aware of the employer's "no tolerance policy." *See, e.g., Bartosh,* Hearing No. 02201209EC (Sept. 18, 2002) (misconduct found where employee aware of employer's policy which prohibited off-duty drug use and employee admitted to smoking marijuana, legally, in Holland while on vacation). Cross, however, got a second chance because of the last chance process in the labor agreement. Cudahy provided this last chance agreement even though, under its personnel policies, Cross's high absenteeism would have made him ineligible for the last chance agreement without Cudahy waiving its already existing contract grounds for discharge.

¶ 18. Cudahy's work rule in the last chance agreement prohibited off-duty consumption of either alcohol or illegal drugs. These terms were agreed upon in the labor contract with the union; they were not unique to Cross. The last chance agreement arose only *after* Cross was involved in a workplace accident in which, while operating a material handling truck, he injured a co-worker and *after* Cross showed cocaine metabolites in his system. His second offense, within six weeks of signing the last chance agreement, was use of alcohol on two occasions. Cross operated a material handling truck

around other employees. The last chance agreement gave Cross an opportunity to get assistance with substance abuse, retain his job, and avoid again creating a dangerous work place.[7]

¶ 19. The appropriateness of establishing the off-duty work rule is determined at the time of the creation of the rule and not at the time of the violation of the rule. *Gregory*, 14 Wis. 2d at 138. In the present case, Cudahy and the union established the last chance agreement process to assist employees with drug and alcohol problems while providing a safe work environment for all employees. It is not relevant under *Gregory* that the precipitating fact of Cross's discharge was violating his last chance agreement without causing another safety-related incident. *Gregory* does not require proof that a specific co-worker has been endangered for violation of a last chance agreement to be misconduct supporting discharge. *Id.* at 140.

¶ 20. Under due weight deference, a reviewing court can find that a more reasonable interpretation is appropriate from the record and "need not defer to the agency's interpretation which while reasonable, is not the interpretation which the court considers best and most reasonable." *Harnischfeger*, 196 Wis. 2d at 660 n.4.; *Margoles*, 221 Wis. 2d at 265 n.3. We note that

---

[7] Additionally, in their briefs both to the circuit court and to this court, the parties discussed various substance abuse theories and Cudahy included a copy of the DSM-IV discussing the relationship between the use of illegal drugs and the consumption of alcohol. However, because none of that information was part of the record which LIRC examined in making its determination, it will not be considered here. *Van Deurzen v. Yamaha Motor Corp. USA*, 2004 WI App 194, ¶ 6, 276 Wis. 2d 815, 688 N.W.2d 777.

heavy machinery and equipment is commonly used in a meat packaging factory such as Cudahy, and that the industrial accident giving rise to the dispute before us involved a material handling truck. We conclude that Cudahy's last chance agreement in which the employee agreed not to use alcohol or illegal drugs, either on or off-duty, was part of a negotiated collective bargaining agreement, and was reasonably related to job safety and the protection of all employees. We therefore conclude that Cross's violation of his last chance agreement twice within the first six weeks of his signing it constituted misconduct under *Gregory* and *Boynton Cab Co.* and is a legal conclusion consistent with prior LIRC opinions involving use of both illegal drugs and alcohol.

*By the Court.*—Order reversed.