COURT OF APPEALS
DECISION
DATED AND FILED

June 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1263**

Cir. Ct. No. **2020CV4853**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

GREGORY MALLETT,

PETITIONER-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION,

RESPONDENT-RESPONDENT,

WORK INJURY SUPPLEMENT BENEFITS FUND,

RESPONDENT,

BRIGGS & STRATTON CORPORATION,

EMPLOYER.

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Gregory Mallett, *pro se*, appeals the order of the circuit court affirming the decision of the Labor and Industry Review Commission (LIRC), which dismissed Mallett's claim for compensation from the Work Injury Supplement Benefits Fund.  Mallett asserted that his neck pain and cervical spine condition were caused by injuries he sustained while working for the Briggs & Stratton Corporation in 1984.  LIRC determined that the medical evidence in the record did not support Mallett's claim that his work duties during the relevant time frame materially contributed to his condition.

¶2    The circuit court affirmed LIRC's decision, finding that the evidence sufficiently supported LIRC's decision.  Upon review, we affirm.

## BACKGROUND

¶3    This case has a long history.  Mallett started working for Briggs & Stratton in 1978.  In April 1981, he suffered a back injury while pushing a cart that contained several hundred pounds of material.  Mallett was diagnosed with thoracic myositis and a thoracolumbar sprain.  He filed a worker's compensation claim, which was heard by an administrative law judge (ALJ) in 1984.  The ALJ determined that this was an accidental work injury and awarded temporary disability, five percent permanent partial disability, and medical expenses.  LIRC affirmed this decision.

¶4    Mallett sought judicial review of that decision, particularly with regard to the finality of the order issued by LIRC.  The circuit court determined that LIRC was correct in issuing a final order as opposed to an interlocutory order, noting

that "there was no evidence in the record that Mallett's condition was likely to change in the future." This court also affirmed the finality of LIRC's order, *see Mallett v. LIRC*, No. 85-0929, unpublished slip op. at 1-2 (WI App Jan. 10, 1986), and our supreme court rejected Mallett's petition for review.

¶5    After the 1981 injury, Mallett returned to Briggs & Stratton in May 1983, performing light duty work as a cam gear inspector. While on this job, Mallett sustained another workplace injury to his right arm in December 1983. He filed a worker's compensation claim which was conceded by Briggs & Stratton, and received temporary disability payments and one percent permanent partial disability for his right arm. Mallett returned to light duty as a piston inspector from January 1984 until April 24, 1984—his last day at Briggs & Stratton.

¶6    In 1987, Mallett filed another worker's compensation claim, seeking additional medical expenses for thoracic myositis and tendonitis of his right upper extremities. He listed both the 1981 and the 1983 injuries on the claim application, arguing that the 1981 injury had been aggravated by his work as a cam gear inspector. Therefore, he sought to reopen the final order from the 1981 case on the basis that he was suffering from an occupational disease. The ALJ in that case rejected the claim because the ALJ in the 1981 case had determined it to be an accidental work injury. LIRC affirmed that decision; Mallett sought judicial review, but his appeal was dismissed by both the circuit court and this court for being untimely.

¶7    However, upon inquiry by Mallett, it was determined that decision only dismissed the portion of his claim with regard to the 1981 injury, which was deemed as final, leaving the claim regarding the 1983 injury viable. Mallett then pursued that claim, for which an administrative hearing was held in 2007.

Specifically, Mallett argued that the injury to his right arm in December 1983 while performing his job as a cam gear inspector was "a material contributory causative factor in the onset or progression of a neck and right arm condition or disability due to cervical myelopathy." In support of his claim, Mallett submitted medical records and reports from his treating physicians.

¶8      Briggs & Stratton retained Dr. Richard K. Karr to conduct an independent medical evaluation of Mallett. Dr. Karr opined that the 1983 arm injury had not caused any neurological damage, and that any activities that Mallett had performed under this light duty assignment were not "injurious to spinal anatomy or function."

¶9      The ALJ for the 2007 hearing found Dr. Karr's opinion to be more credible than the opinions of Mallett's treating physicians. The ALJ noted that the treating physicians had generally related Mallett's neck pain to the 1981 injury— which had already been deemed to be accidental—and had not assigned causation to the 1983 arm injury. Therefore, this claim was dismissed by the ALJ, and LIRC upheld that decision. The circuit court and this court affirmed LIRC's determination. *See Mallett v. LIRC*, No. 2009AP1130, unpublished slip op. ¶1 (WI App Mar. 2, 2010).

¶10     Mallett filed yet another claim for worker's compensation in 2014. In this claim, he alleged that the work he performed as a piston inspector, from January 1984 until his final day at Briggs & Stratton in April 1984, had aggravated or contributed to his spinal condition. The ALJ in that case denied the claim, stating that it had previously been determined that Mallett did not have a viable claim.

¶11     LIRC upheld that decision. It stated that Mallett's claim was properly rejected by the ALJ based on issue preclusion. LIRC further found that, with regard

4

to the time frame from January to April 1984, the medical evidence was insufficient to support a finding of causation based on those work duties.

¶12    Upon judicial review of that decision, the circuit court affirmed in part and reversed in part. The court affirmed the decision regarding the finding that issue preclusion "bars the portion of Mallet[t]'s claim relating to the April 1, 1981 and December 6, 1983 dates of injury." However, the court reversed and remanded the matter back to LIRC "for additional findings regarding the sufficiency of Mallet[t]'s medical evidence relating to his work exposures from January to April 1984" to determine whether that work was a material contributory causative factor in his spinal condition, thereby resulting in a 1984 date of injury. This court affirmed that decision, *see Mallett v. LIRC*, 2017AP1601, unpublished slip op. ¶1 (WI App July 23, 2019), and our supreme court denied Mallett's petition for review.

¶13    On remand, LIRC presented the parties with two options: conduct a new hearing, which would include the evidence submitted at the previous hearing together with any additional relevant evidence as submitted by the parties; or waive the new hearing and stipulate to a decision that would be based on the review of the evidence submitted at the previous hearing. The parties chose the second option, and a review was conducted of the record from the previous hearing.

¶14    Upon review, LIRC again stated that it found Dr. Karr's opinion more credible than those of Mallett's treating physicians. In fact, LIRC noted that the treating physicians had not made reference to Mallett's work exposures from January to April 1984 until Mallett "sent each doctor a pre-typed letter" in 2015 describing his job duties during that time frame as a "material contributing factor of his injury," which the doctors then signed. LIRC stated it found nothing in the record which provided medical reasoning for the statements in those preprinted

5

letters. As a result, LIRC dismissed Mallett's claims that his work duties from January to April 1984 had caused further injury to his back and right upper extremities.

¶15 Mallett sought judicial review of that decision as well. The circuit court affirmed LIRC's determination, citing "ample evidence" in the record to support it. This appeal follows.

## DISCUSSION

¶16 On appeal, this court reviews LIRC's factual findings and legal conclusions, not those of the circuit court. *Mueller v. LIRC*, 2019 WI App 50, ¶17, 388 Wis. 2d 602, 933 N.W.2d 645. We may only set aside an order issued by LIRC if (1) LIRC acted "without or in excess of its powers"; (2) the order was "procured by fraud"; or (3) the findings of fact by LIRC do not support the order. *See* WIS. STAT. § 102.23(1)(e) (2019-20)[1]; *see also Patrick Cudahy Inc. v. LIRC*, 2006 WI App 211, ¶5, 296 Wis. 2d 751, 723 N.W.2d 756.

¶17 We review LIRC's legal conclusions *de novo*; however, we defer to LIRC's findings of fact "if they are supported by credible and substantial evidence." *Mueller*, 388 Wis. 2d 602, ¶17. Credible evidence is that which is "sufficient to exclude speculation or conjecture." *Bumpas v. DILHR*, 95 Wis. 2d 334, 343, 290 N.W.2d 504 (1980). "Evidence that is relevant, probative, and credible, and which is in a quantum that will permit a reasonable factfinder to base a conclusion upon it," is substantial evidence. *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983). The burden of showing that LIRC's decision was not

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

supported by credible and substantial evidence "is on the party seeking to set aside LIRC's findings and order." *Xcel Energy Servs., Inc., v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665.

¶18  Mallett's arguments on appeal all essentially challenge LIRC's findings of fact that relied on Dr. Karr's opinion, which LIRC deemed to be the most credible of the evidence submitted by the parties.  It is the function of the administrative agency, not this court, to "determine the credibility of evidence or of witnesses, and … to weigh the evidence and to decide what should be believed." *E. F. Brewer Co. v. DILHR*, 82 Wis. 2d 634, 636-37, 264 N.W.2d 222 (1978).  In fact, "[c]onflicts in testimony of medical witnesses are to be resolved" by LIRC, and its determination "that the testimony of one qualified medical witness rather than the testimony of another is to be believed is conclusive." *Id.* at 637.

¶19  We conclude that Mallett has not met his burden of demonstrating that the evidence LIRC relied on was not credible and substantial.  In the first place, Dr. Karr's report was based on a previous examination he performed on Mallett in 2006, as well as a review of his medical records from other physicians who had examined Mallett in the years following his work injuries.  Those records indicate that the neck and spine condition that Mallett currently suffers from was not present during those examinations.

¶20  Furthermore, Dr. Karr explained why he disagreed with the opinions of Mallett's treating physicians:  because there was no factual basis to support their opinions—which were offered in the form of signing the pre-typed letter that Mallett sent them in 2015—that Mallett's current condition was caused by the work injuries. Rather, the treating physicians assumed that Mallett's neck and spine pain were the result of his work injuries, based on the premise that Mallett had been treated for

these symptoms since being injured; Dr. Karr pointed out that this was *not* the case, according to Mallett's medical records.

¶21    Although Mallett argues that Dr. Karr appears to conflate his job duties for the piston inspection job with the cam gear job at times in his report, any error on the part of Dr. Karr did not compromise his findings. Dr. Karr's report demonstrates an understanding of Mallett's light duty work relating to piston inspection in 1984—the only relevant time frame for his claim in this appeal. Dr. Karr found that this repetitive motion was the cause of Mallett's right arm injury, and was not related to his neck and spine issues.[2] Furthermore, while Mallett argues that he did have neck and back pain following his work injuries, he does not demonstrate why his medical records, which do not corroborate this claim, are not credible.

¶22    In short, Dr. Karr's report was extremely thorough, and given to a reasonable degree of medical probability. Thus, we conclude that it meets the definitions of substantial and credible evidence. *See **Bumpas***, 95 Wis. 2d at 343; ***Princess House, Inc.***, 111 Wis. 2d at 54. Accordingly, we must defer to LIRC's finding that, after reviewing and weighing all the evidence submitted, this evidence was the most credible. *See **E. F. Brewer Co.***, 82 Wis. 2d at 636-37. We conclude that this evidence is sufficient to support LIRC's decision to dismiss Mallett's claims.

---

[2] We note that Mallett cites to ***Miron Construction Co. v. Kampfer***, 215 Wis. 2d 323, 572 N.W.2d 902 (Ct. App. 1997), for the proposition that a doctor must make a definitive diagnosis in order to be deemed credible by LIRC. However, this case was a per curiam opinion; it has no precedential value and may not be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3). In any event, the holding in that case does not stand for the premise advanced by Mallett.

¶23 Finally, Mallett asserts that LIRC perpetuated fraud in this case by omitting documentation from the record, and that his due process rights were violated due to a purported conflict of interest from the Department of Justice representing both LIRC and the Work Injury Supplement Benefits Fund as respondents in this matter. Mallett's arguments "are not developed themes reflecting any legal reasoning" and are unsupported by any legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). We therefore decline to address them. *See id.* at 647.

¶24 In sum, there are no grounds for overturning LIRC's decision in this matter. *See* WIS. STAT. § 102.23(1)(e); *see also Patrick Cudahy Inc.*, 296 Wis. 2d 751, ¶5. Accordingly, we affirm.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.