John S. KOWALCHUK, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Sunny Slope Grading, Inc., and Regent Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 99–1183. Submitted on briefs December 6, 1999.—Decided March 1, 2000.*

## 2000 WI App 85

(Also reported in 610 N.W.2d 122.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven G. Kmiec* of *Kmiec Law Offices* of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *Stephen M. Sobota,* assistant attorney general, and *James E. Doyle,* attorney general. On behalf of the defendants-respondents Sunny Slope Grading, Inc. and Regent Insurance Company, the cause was submitted on the brief of *William R. Sachse, Jr.* and *David F. Andres* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. John S. Kowalchuk appeals from a circuit court order upholding a Labor and Industry Review Commission (LIRC) decision which denied his claim that he sustained an injury on or about July 6, 1996, due to his employment at Sunny Slope Grading, Inc. Kowalchuk contends that substantial and credible evidence did not support LIRC's ruling that his injury claim was invented to justify his failure to report for work for purely personal reasons. Kowalchuk asserts that LIRC improperly rejected the uncontested opinions of his treating doctors which indicated that he was injured while performing work for Sunny Slope. We disagree with Kowalchuk and conclude that there was credible evidence to raise a legitimate doubt that he sustained a compensable injury on or about July 6, 1996. Specifically, we hold that LIRC, or any administrative agency acting as fact finder, does not have to accept uncontradicted medical evidence based upon a history given by the employee which the agency finds incredible. The circuit court's order is affirmed.

## BACKGROUND

¶ 2. The facts are largely undisputed. Kowalchuk began working for Sunny Slope in 1987, repairing construction equipment and vehicles. In August 1993, Kowalchuk injured his back at work. He was treated by Drs. George Bartl and Balaraju Gandhavadi. After he underwent surgery, Sunny Slope conceded a temporary total disability and a permanent partial disability of 15%. In June 1994, Kowalchuk returned to work subject to a forty-five hour work week, nine-hour per day restriction. Sunny Slope generally accommodated Kowalchuk's restriction. When Kowalchuk returned to his job, he worked as a mechanic, delivered machines to work sites, and drove a tractor trailer and vibrating earth compactor.

¶ 3. On July 5, 1996, Kowalchuk informed management at Sunny Slope that he was going to take time off from work on Saturday, July 6, and that he wanted to be on vacation the following week. Management, however, had previously informed Kowalchuk that no mechanics could take summer vacations because there had been an unusual amount of rain that had slowed Sunny Slope's construction work. Kowalchuk nonetheless insisted that he was taking off July 6.

¶ 4. When Kowalchuk did not report to work on July 6, he was discharged the following Monday, July 8. The next day, Kowalchuk visited Bartl, who determined that Kowalchuk was temporarily totally disabled. Bartl directed Kowalchuk to see Gandhavadi for a "functional capacity evaluation" and to obtain medical tests on his back. A week later, Bartl reviewed Kowalchuk's tests and found that he did not have any "significant abnormality." On July 30, Bartl concluded that Kowalchuk was fit to return to work. Meanwhile, Gandhavadi examined Kowalchuk on July 23 and

determined that he had a low back strain which would preclude him from returning to work for three to four weeks. After a couple of follow-up appointments in August 1996, Gandhavadi informed Kowalchuk that he could return to work.

¶ 5. Kowalchuk filed an application for worker's compensation in September 1996. After hearings were held, the administrative law judge (ALJ) issued its findings and order determining that there was no compensable injury on or about July 6, 1996, that Sunny Slope was not liable for medical expenses and temporary disability after July 6, 1996, and that Kowalchuk had sustained a permanent partial disability based on a loss of earning capacity of approximately 25% due to his original 1993 injury.

¶ 6. Kowalchuk appealed the ALJ's order. In a decision dated July 29, 1998, LIRC adopted the ALJ's findings and upheld its conclusion except that LIRC adjusted Kowalchuk's loss of earning capacity from 25% to 20%. In its memorandum opinion, LIRC added that it had conferred with the ALJ and had adopted its assessment that Kowalchuk was not credible in claiming that he did not appear at work on July 6, 1996, because of his ailing back. The circuit court affirmed LIRC's decision.

## DISCUSSION

¶ 7. On appeal, Kowalchuk's primary argument is that substantial and credible evidence did not support LIRC's ruling that he fabricated the July 6, 1996 injury. Whether Kowalchuk sustained an injury while performing services growing out of and incidental to his employment, *see* WIS. STAT. § 102.03(1)(a), (c)1

(1995–96),[1] is an issue of fact, *see Bumpas v. DILHR*, 95 Wis. 2d 334, 342, 290 N.W.2d 504 (1980). An appellate court's review of findings of fact by LIRC is governed by statute and is limited. *See L & H Wrecking Co. v. LIRC*, 114 Wis. 2d 504, 507–08, 339 N.W.2d 344 (Ct. App. 1983). LIRC's factual findings are conclusive on appeal so long as they are supported by credible and substantial evidence. *See* WIS. STAT. § 102.23(6); *Bretl v. LIRC*, 204 Wis. 2d 93, 100, 553 N.W.2d 550 (Ct. App. 1996). The evidence in support of LIRC's finding need only be sufficient to exclude speculation or conjecture. *See Bumpas*, 95 Wis. 2d at 343.

¶ 8. In a worker's compensation hearing, the employee has the burden of proving the elements of his or her claim, and on appeal he or she also has the burden to show that LIRC's decision should be overturned. *See Bretl*, 204 Wis. 2d at 99. LIRC has a duty to deny compensation where the evidence raises a legitimate doubt as to the existence of facts essential to establish a claim. *See Bumpas*, 95 Wis. 2d at 342. A reviewing court must determine whether sufficient evidence established a legitimate doubt regarding the employee's claim of injury. *See id.* at 344. A legitimate doubt comprises "some inherent inconsistency . . . or conflict in the testimony." *Id.* (citations omitted; omission in original). LIRC, however, cannot rely solely upon its "cultivated intuition." *Leist v. LIRC*, 183 Wis. 2d 450, 457, 515 N.W.2d 268 (1994) (citation omitted).

¶ 9. At his administrative hearing, Kowalchuk testified that the reason he was absent from work on July 6, 1996, was that he was having "problems with [his] back again for the third time in several weeks." He

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version.

stated that he told management that he was having back pain and wanted time off. He conceded, however, that he had been instructed that he would not be permitted to take any summer vacation and that he had not seen a doctor about his back until after he was terminated on July 8.

¶ 10. Sunny Slope vice president John Christiansen testified that on July 5, Kowalchuk told him that he was planning to go on vacation. Christiansen reminded Kowalchuk that Sunny Slope management had previously decided that its mechanics could not take summer vacations. Kowalchuk told Christiansen, "I'm going on vacation tomorrow, and they can fire me if they don't like it." Christiansen stated that at no time did Kowalchuk complain about back pain, explain that he needed to take off of work because of back pain or provide a doctor's note or excuse.

¶ 11. Sunny Slope president Tom Brubakken stated at the hearing that Kowalchuk had telephoned him on July 5. In their conversation, Kowalchuk asked to have a week of vacation because he normally took vacation the week following July 4. When Brubakken explained that none of the mechanics could take off, Kowalchuk asserted that he had already made plans, that his wife was off of work and that they were expecting company. Brubakken restated that Kowalchuk had to be at work and "that was all there was to it." At the end of the conversation, Kowalchuk complained that his back was hurting him and that he needed some time off for that. Brubakken testified that when Kowalchuk showed up for work on Monday, he was terminated for failing to report to work on July 6.

¶ 12. Sunny Slope foreman Mark Greenlees testified that Kowalchuk had told him that he was planning to take vacation the week after July 4 and

that he wanted Greenlees to inform the owners. When Greenlees asked if the front office knew about Kowalchuk taking time off, Kowalchuk responded that "they have had nine years notice" in reference to his practice of taking that week off in prior years.

¶ 13. Dean Castona, an employee of a business that sold machine parts to Sunny Slope, confirmed Sunny Slope's version of the facts. He stated that sometime before July 3, 1996, Kowalchuk told him that he would be off of work after July 4, but that he had not told anyone. When Castona inquired further, Kowalchuk stated, "If they don't like it, fuck them. They can fire me."

¶ 14. Although neither Dr. Bartl nor Dr. Gandhavadi appeared at the administrative hearing, records of Kowalchuk's treatment were submitted as evidence. According to this evidence, Kowalchuk visited Bartl on July 9, after having not seen him for seven months. Kowalchuk explained to Bartl that he was working nine-hour days, that he was in pain every day, that Sunny Slope wanted him to work longer hours and that he was required to perform work that he could not physically handle. Kowalchuk told Bartl that he had been fired because he could not fulfill Sunny Slope's demands.

¶ 15. In his summary of Kowalchuk's July 9 visit, Bartl stated that although Kowalchuk was in a fair amount of pain, he was "apparently . . . walking very well" and there was "no apparent weakness at this time." Bartl directed Kowalchuk to see Gandhavadi for a "functional capacity evaluation" and to obtain medical tests on his back, prescribed him pain medication, and concluded that he was temporarily totally disabled "until I have the results of Dr. Gandhavadi's exam and the results of the studies."

¶ 16. On July 16, 1996, Bartl reviewed Kowalchuk's MRI and lumbar spine films which, Bartl explained, did "not reveal any evidence of significant abnormality in my opinion or in the opinion of the radiologist." Kowalchuk nonetheless informed Bartl that he was still experiencing back pain. On July 18, Bartl wrote a letter stating that Kowalchuk was temporarily totally disabled from July 6 to July 30, 1996, at which point he would be reevaluated.[2]

¶ 17. Kowalchuk was examined by Gandhavadi on July 23. In his report, Gandhavadi stated that Kowalchuk had been experiencing a worsening of pain over the past six weeks and that his employer had insisted that he work more than nine hours a day and operate a tractor trailer and earth compactor which produce a lot of vibration. Gandhavadi also indicated that because Kowalchuk was unable to do those things, he was terminated. Gandhavadi determined that Kowalchuk had a low back strain but that the electromyogram (EMG) test did not reveal any signs of radiculopathy or neuropathy. Kowalchuk was advised to perform stretching exercises, to avoid operating the tractor trailer or earth compactor, and that within three to four weeks he should be able to return to work.

¶ 18. On July 30, Bartl reviewed Kowalchuk's EMG test, which he found to be normal, and the MRI, which did "show some early degenerative changes in the L4–5 and L5-S1 discs, but no evidence of recurrent bulging ruptured disk or anything of surgical nature." Bartl concluded that "there was no reason why

---

[2] Bartl's July 18 letter and his July 9, 16 and 30 evaluations were attached to his WC–16–B report, submitted for purposes of Kowalchuk's worker's compensation claim. A WC–16–B report is authorized by WIS. STAT. § 102.17(1)(d) as admissible in lieu of the physician's oral testimony.

[Kowalchuk] could not return to work full-time to his usual and customary job." Kowalchuk did not visit Bartl again until February 1997.

¶ 19. Kowalchuk was examined by Gandhavadi twice in August. At his second visit, on August 20, Gandhavadi told Kowalchuk that he could return to work for no more than forty-five hours a week and that he should avoid operating the earth compactor.[3]

¶ 20. Having reviewed the testimony from Kowalchuk's administrative hearing, we are satisfied that LIRC was presented with sufficient credible evidence to raise a legitimate doubt as to his claim that he sustained an injury on or about July 6, 1996. According to Sunny Slope management and employees, Kowalchuk decided to take off July 6 because he wanted vacation, not because he had back pain. Kowalchuk had not seen a doctor in the weeks prior to being terminated, although he testified that he had been having problems with his back for several weeks. He did not testify about any particular incident or day when he injured his back. The only time he mentioned his back in the week prior to his termination was during his conversation with Brubakken after his initial plea for vacation was rejected. When Kowalchuk returned to work on July 8, he did not mention any back pain. Indeed, it was not until after his discharge that he consulted his physician. This evidence was sufficient to place a substantial cloud over Kowalchuk's claim.

¶ 21. Kowalchuk nonetheless contends that LIRC improperly substituted its own opinion for the uncontested opinions of his treating physicians, both of whom diagnosed Kowalchuk as having aggravated a

---

[3] Gandhavadi's August 20 office notes were apparently attached to his WC–16–B report.

previous back injury as a result of his employer's work conditions. He cites *Erickson v. DILHR*, 49 Wis. 2d 114, 181 N.W.2d 495 (1970), and *Leist* for support.

¶ 22. *Erickson* involved an employee who claimed that he injured his back while at work. An examiner for the Department of Industry, Labor and Human Relations (DILHR) found that inconsistencies in Erickson's testimony raised a legitimate doubt as to his sustaining an injury at work. The conflicting testimony involved Erickson's apparent failure to report the alleged incident to his immediate supervisor and evidence that Erickson had experienced prior episodes of back pain. *See Erickson*, 49 Wis. 2d at 119. The supreme court reviewed the evidence, including Erickson's physicians' WC–16–B reports which the court noted constituted prima facie evidence of the matter contained therein. *See* WIS. STAT. § 102.17(1)(d). The court stated that "[t]he examiner could disregard the conclusion in the medical reports that the back injury was caused by the alleged incident at work, if he [or she] did not believe the statements related by the applicant concerning the incident were true." *Erickson*, 49 Wis. 2d at 126. The court determined, however, that Erickson was diagnosed with a herniated disc shortly after the incident and that there was no medical testimony that his herniation was caused by anything other than the work incident about which Erickson had testified. The court concluded that the examiner had erred in finding a legitimate doubt as to the cause of Erickson's injury.

¶ 23. *Erickson* is distinguishable from this case because the issue there concerned when and where an employee's injuries occurred, not, as in this case, whether an injury was sustained in the first instance. In addition, as the supreme court held in *Bumpas*, "the

213

*Erickson* case is . . . distinguishable on its facts in that in *Erickson* the injured employee was forced to stop work immediately due to the pain and discomfort and to report to the plant hospital at once." *Bumpas*, 95 Wis. 2d at 347. Conversely, Kowalchuk did not allege a particular incident that resulted in his injury. He did not complain of back pain to his employer until after his initial requests for vacation were rejected. Moreover, he did not see a doctor until after he was fired. *Cf. id.* at 347–48.

¶ 24. Kowalchuk next finds support in *Leist*. There, like *Erickson*, LIRC found legitimate doubt as to whether the claimant had sustained a back injury attributable to a work incident. LIRC relied upon inconsistencies between Leist's testimony and the opinion of his doctor—who unequivocally stated that a work incident had caused Leist's injury. The court of appeals disagreed with LIRC, determining that because Leist's doctor's medical opinion was never discredited by countervailing expert medical opinion, the evidence was unrefuted; therefore, there was insufficient evidence to raise a legitimate doubt as to whether a work incident had caused Leist's injury. *See Leist*, 183 Wis. 2d at 457. The supreme court affirmed the court of appeals decision but rejected any requirement that LIRC be required to produce countervailing expert testimony to establish a legitimate doubt as to the claimant's cause of injury. *See id.* at 453–54. In addressing the alleged inconsistencies in Leist's testimony, the court noted that no facts had been presented to challenge the veracity of Leist's testimony or the accuracy of his doctor's opinion. LIRC's finding of inherent inconsistencies between Leist's testimony and his doctor's opinion was unsupported.

¶ 25.	In contrast to *Leist*, Kowalchuk's testimony that he had sustained an injury on or about July 6, 1996, was refuted by three employees at Sunny Slope and by a third party, all of whom stated that Kowalchuk sought to take off of work on July 6 for purely personal purposes, not for medical reasons. Only Sunny Slope's president indicated that Kowalchuk had mentioned back pain prior to July 6, and this occurred only after Kowalchuk's requests for vacation had been denied. This case offers precisely what LIRC could not provide in *Leist*—countervailing testimony raising legitimate doubt about an employee's injury. *See id.* at 461.

¶ 26.	As *Leist* instructs, absent offsetting expert medical opinions to support a legitimate doubt, LIRC can reject an employee's expert evidence where the employee has been questioned about the information he or she provided his or her doctor. *See id.* Here, Sunny Slope specifically cross-examined Kowalchuk about his explanation to Bartl about why he was fired. Kowalchuk told Bartl that he was terminated because he was unable to work more than forty-five hours per week and because he could not drive his employer's heavy machinery. Sunny Slope challenged his explanation and then presented its own evidence showing that he was terminated solely because he failed to report to work on July 6. Sunny Slope's evidence was substantial, and we are satisfied that LIRC was justified in rejecting the expert opinions of Kowalchuk's doctors even though there was no countervailing expert medical evidence. *See id.* at 459 (citing *McCarthy v. Sawyer-Goodwin Co.*, 194 Wis. 198, 204, 215 N.W. 824 (1927)); *Brakebush Bros., Inc. v. LIRC*, 210 Wis. 2d 623, 632, 563 N.W.2d 512 (1997) (an employer is "not required to present an expert medical opinion to support a legiti-

mate doubt"); *Davis v. Industrial Comm'n*, 22 Wis. 2d 674, 679, 126 N.W.2d 611 (1964) ("The opinions and conclusions of medical witnesses based upon statements of the claimant were to be disregarded if the commission (here the examiner) did not believe such statements were true."); *Conradt v. Mt. Carmel Sch.*, 197 Wis. 2d 60, 69, 539 N.W.2d 713 (Ct. App. 1995) ("[E]ven if a claimant offers a WC–16–B and there is no contradictory evidence presented, LIRC may still reject the expert opinion if it does not believe it to be true.").

¶ 27. In adopting Sunny Slope's version of the events leading up to Kowalchuk's alleged injury, LIRC's decision was based on its determination that Kowalchuk was incredible. LIRC had conferred with the ALJ and chose to adopt its assessment of Kowalchuk. As a reviewing court, we may not review LIRC's decision on the credibility of the evidence. *See Manitowoc County v. DILHR*, 88 Wis. 2d 430, 437, 276 N.W.2d 755 (1979); WIS. STAT. § 102.23(6). Thus, we conclude that substantial and credible evidence supported LIRC's decision dismissing Kowalchuk's claim that he sustained an injury on or about July 6, 1996.

¶ 28. Next, Kowalchuk objects to LIRC's ruling that Sunny Slope and Regent Insurance Company, Sunny Slope's insurer, are "not liable for additional temporary disability or medical expenses for treatment beginning after July 6, 1996." Kowalchuk argues that LIRC's language, which addresses Kowalchuk's July 6, 1996 claim, "presumably terminates all subsequent benefits for medical expenses and disability benefits related to the 1993 injury."

¶ 29. Kowalchuk's argument, however, addresses only a hypothetical situation in which he

may be entitled to additional benefits relating to his uncontested 1993 injury. As Sunny Slope notes, no evidence was produced at the initial hearings concerning an issue of additional benefits for his 1993 injury. Because this claim has not been asserted by Kowalchuk, it is a moot issue and has no bearing on LIRC's determination regarding his July 6, 1996 injury.

> A moot case has been defined as one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy.

*Wisconsin Employment Relations Bd. v. Allis-Chalmers Workers' Union*, 252 Wis. 436, 440–41, 31 N.W.2d 772 (1948). We reject Kowalchuk's argument.

*By the Court.*—Order affirmed.