# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP707

Complete Title of Case:

>   JANET MUELLER,
>
>   PETITIONER-APPELLANT,
>
>   V.
>
>   LABOR AND INDUSTRY REVIEW COMMISSION, ASHLEY FURNITURE
>   INDUSTRIES, TWIN CITY FIRE INSURANCE COMPANY
>   AND GALLAGHER BASSETT SERVICES, INC.,
>
>   RESPONDENTS-RESPONDENTS.

---

| | |
|---|---|
| Opinion Filed: | August 27, 2019 |
| Submitted on Briefs: | December 11, 2018 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Matthew E. Yde* of *Yde Law Firm, S.C.*, Wausau. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Jennifer L. Vandermeuse*, assistant attorney general. |
| | On behalf of the respondents-respondents, Ashley Furniture, Twin City |

Fire Insurance Company and Gallagher Bassett Services, Inc., the cause was submitted on the brief of *Lisa F. Kinney* of *Cousineau, Waldhauser & Kieselbach, P.A.*, Ironwood, Michigan.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 27, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP707**

STATE OF WISCONSIN

Cir. Ct. No. **2017CV120**

**IN COURT OF APPEALS**

---

JANET MUELLER,

  PETITIONER-APPELLANT,

 V.

LABOR AND INDUSTRY REVIEW COMMISSION, ASHLEY FURNITURE INDUSTRIES, TWIN CITY FIRE INSURANCE COMPANY AND GALLAGHER BASSETT SERVICES, INC.,

  RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Trempealeau County: RIAN W. RADTKE, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1  SEIDL, J.  Janet Mueller appeals a circuit court order affirming a decision by the Labor and Industry Review Commission (the Commission), which dismissed Mueller's application for worker's compensation temporary disability

benefits. Mueller argues the Commission erred by concluding that Mueller's voluntary retirement from her employment precluded her from establishing that she suffered an actual wage loss, and that she therefore was not entitled to receive disability benefits under WIS. STAT. § 102.43 (2017-18).[1] In the alternative, Mueller argues that even if her voluntary retirement initially prevented her from showing an actual wage loss, the Commission erred by concluding that she failed to show she suffered an actual wage loss when she tried—and eventually succeeded—to re-enter the labor market.

¶2 We conclude that under WIS. STAT. § 102.43, an employee must show that he or she sustained an actual wage loss attributable to his or her injury in order to be entitled to temporary disability benefits. Applying that standard, we determine that the Commission did not err in dismissing Mueller's claim because, as the Commission found, Mueller voluntarily retired for reasons entirely unrelated to her injury, and her subsequent attempts to re-enter the labor market were not impaired by her work-related injury. Therefore, any wage loss Mueller suffered is solely attributable to her own choices, and not to her work-related injury. Consequently, we affirm.

## BACKGROUND

¶3 In 1997, Mueller began working for Ashley Furniture, a company that manufactures and sells home furnishings. She worked on Ashley's furniture

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"finishing line," in a production position. This position required her to lift heavy objects and involved the repetitive use of both upper extremities.

¶4     On October 17, 2013, Mueller injured her right arm and shoulder while she and another employee were lifting a headboard that weighed approximately 100 pounds. As a result of this injury, Mueller was placed on full-time light duty. While she was on light duty, Ashley paid Mueller $311 per week in temporary partial disability (TPD) benefits. That amount represented the wage loss Mueller suffered due to her light duty position paying her less than her regular duty position.

¶5     Over four months later, Mueller submitted to Ashley a notice of resignation form. In response to the form's prompt as to the reason for her resignation, Mueller wrote: "Retiring." Mueller remained on light duty—and consequently received TPD benefits—until her retirement became effective on March 14, 2014.

¶6     Approximately one month after her retirement, Mueller realized that she was no longer receiving TPD benefit payments. Accordingly, she contacted Amy Neubauer, Ashley's human resources manager, in an attempt to reinstate her employment. When Mueller's reinstatement request was denied, she submitted an employment application for a vacant position at Ashley. Ultimately, Ashley did not select Mueller to fill this position.

¶7     On June 5, 2014, Mueller underwent surgery to repair her right rotator cuff and biceps tendon. She reached an end of healing exactly one year

later.[2] As a result of this surgery, Ashley initially conceded Mueller suffered a five percent permanent partial disability (PPD), as compared to an amputation of the right shoulder, and paid her that benefit. An additional three percent PPD was then assessed by Ashley's independent medical examiner, which Ashley also paid to Mueller. In addition, Ashley paid all of Mueller's medical treatment bills and medical mileage. None of those benefit payments are contested on appeal.

¶8 In January 2015, while still in her healing period, Mueller secured part-time employment at the Sunflower Cafe. In her new position, Mueller worked six to fourteen hours per week doing "odds and ends," such as washing dishes and cooking.

¶9 Mueller subsequently submitted a hearing application to the Department of Workforce Development, seeking temporary total disability (TTD) benefits from the date of her surgery on June 5, 2014, until her end of healing on June 5, 2015. Mueller's request for a hearing was granted. At her hearing, Mueller clarified that she was also seeking TPD benefits from her retirement date on March 14, 2014, until her date of surgery on June 5, 2014.

¶10 At the hearing, Mueller testified that she had been considering retirement prior to her injury because she "wasn't really getting along with my girls that I worked with." She also testified that no one in Ashley's worker's compensation department informed her that her retirement could have an effect on

---

[2] Mueller's end-of-healing date was found, as a matter of historical fact, by the administrative law judge who denied her temporary disability claim. On appeal, neither party disputes this finding, and we will not address the issue further.

her temporary disability benefits, but that if they had she "probably" would not have retired.

¶11    The administrative law judge (ALJ) ultimately dismissed Mueller's claims with prejudice, based upon the finding that Mueller "did not retire because of her work injury." In addition, the ALJ found that Mueller was "not a good historian; neither was she a credible witness."

¶12    Mueller appealed the ALJ's decision to the Commission, which affirmed. The Commission determined, in relevant part, that the "ALJ properly found that the applicant voluntarily retired for reasons unrelated to her work injury."

¶13    Mueller sought judicial review of the Commission's decision. The circuit court affirmed the Commission's decision "to the extent it denie[d] [Mueller's] claim for [TPD] benefits for the period of March 14, 2014 to June 5, 2014." In doing so, the court determined that "the findings of the Commission clearly established Ms. Mueller voluntarily retired for reasons unrelated to her work injury." Mueller did not appeal that portion of the court's decision.

¶14    As to the Commission's decision regarding Mueller's TTD benefits claim for the period from June 5, 2014, to June 5, 2015, the circuit court remanded the matter for further proceedings. Specifically, the court directed the Commission "to consider and determine" whether Mueller re-entered the workforce following her retirement and, if so, whether her return entitled her to temporary disability benefits.

¶15    On remand, the Commission found that Mueller's part-time employment at the cafe showed Mueller "returned to the labor force in a limited

fashion" during her healing period. The Commission also found that Mueller "could work full time … if she wished, but has chosen to work part time and not to look for work elsewhere." Based upon these findings, the Commission concluded Mueller's part-time employment was not "sufficient to establish an actual wage loss due to her injury." The Commission reasoned that if Mueller was "actively looking for full-time work elsewhere, or wanted to work more hours than she worked at Sunflower Cafe but could not, she might have been able to establish an actual wage loss supporting an award for temporary partial disability. … However, no such showing has been made in this case."

¶16 Mueller again sought judicial review. The circuit court affirmed the Commission's decision. Mueller now appeals.

## STANDARD OF REVIEW

¶17 On appeal, we review the Commission's factual findings and legal conclusions, rather than those of the circuit court. *Emmpak Foods, Inc. v. LIRC*, 2007 WI App 164, ¶3, 303 Wis. 2d 771, 737 N.W.2d 60. We defer to the Commission's findings of fact if they are supported by credible and substantial evidence. WIS. STAT. § 102.23(6). However, our supreme court recently ended the practice of deferring to an administrative agency's conclusions of law. *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶¶3, 84, 382 Wis. 2d 496, 914 N.W.2d 21. Accordingly, we review the Commission's legal conclusions de novo. *Id.*, ¶84. Still, in evaluating the persuasiveness of an administrative agency's arguments, we give "due weight" to the agency's experience, technical competence, and specialized knowledge. *Id.*, ¶3.

¶18 This case requires us to engage in statutory interpretation. To do so, we begin with the statutory language. *Flug v. LIRC*, 2017 WI 72, ¶25, 376

Wis. 2d 571, 898 N.W.2d 91. We interpret that language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* When this process produces a plain, clear meaning, we go no further. *Id.*

## DISCUSSION

¶19 As indicated, Mueller argues on appeal that the Commission erred by concluding that Mueller's voluntary retirement precluded her from establishing that she suffered an actual wage loss, and that she therefore was not entitled to receive disability benefits under WIS. STAT. § 102.43. In the alternative, she argues that even if her voluntary retirement initially prevented her from showing an actual wage loss, the Commission erred by concluding that she failed to show she suffered an actual wage loss when she tried—and eventually succeeded—to re-enter the labor market. We discuss each argument in turn.

### I. Voluntary retirement

¶20 Mueller first argues the Commission erred in denying her claim because there "is no statutory authority" for terminating an employee's temporary disability payments on the basis that the employee has voluntarily retired. In support, she observes that "WIS. STAT. § 102.43 states nothing about losing benefits during a healing period due to termination of employment unless the termination involved" one of the specific exceptions set forth in WIS. STAT. § 102.43(9)(a)-(e).

¶21 Before addressing the specifics of Mueller's argument, we first discuss the context in which WIS. STAT. § 102.43(9) appears in order to properly

inform our inquiry. *See **Flug***, 376 Wis. 2d 571, ¶28. Section 102.43(9) is part of Wisconsin's worker's compensation program. *See* WIS. STAT. ch. 102. This program is "a legislatively enacted compromise designed to bring employers and employees together in a mutually beneficial scheme of guaranteeing benefits in the event of work-related injury [or] disease." ***Flug***, 376 Wis. 2d 571, ¶26. "Broadly speaking, an employee is eligible for compensation under this program if he [or she] sustains an injury that arises out of his [or her] employment" ***Id.***, ¶27.

¶22 One form of compensation for which the worker's compensation program affords eligible employees is temporary disability benefits.[3] ***Emmpak Foods***, 303 Wis. 2d 771, ¶9. As we explained in ***Emmpak Foods***, the rationale for awarding an employee temporary disability benefits is set forth in WIS. STAT. § 102.43(1) and (2): "If, during the time the employee is disabled by injury, he or she sustains a wage loss, he or she is eligible for temporary disability benefits." ***Emmpak Foods***, 303 Wis. 2d 771, ¶9. Stated differently, the "purpose of worker's compensation disability benefits is to compensate employees who have lost the ability to work, temporarily or permanently, due to a work-related injury." ***Brakebush Bros. v. LIRC***, 210 Wis. 2d 623, 636, 563 N.W.2d 512 (1997).

¶23 With this context in mind, we now turn to Mueller's argument regarding WIS. STAT. § 102.43(9). Section 102.43(9) provides that "[t]emporary disability, during which compensation shall be payable for loss of earnings, shall include the period during which an employee could return to a restricted type of work during the healing period, unless any of the following apply." The statute

---

[3] The parties agree that the five conditions set forth in WIS. STAT. § 102.03(1)(a)-(e), which determine when liability for worker's compensation exists, were satisfied in this case.

then provides five specific exceptions. *See* § 102.43(9)(a)-(e). The parties agree that none of those exceptions apply here, as they do not concern voluntary retirement.

¶24    Mueller argues that this lack of a specific exception for voluntary retirement in the statute shows that the Commission erred in denying her claim because the "legislature could have easily indicated … that an employee who retires or voluntarily terminates his/her employment is no longer entitled to temporary benefits. The legislature did not do so."

¶25    We are not persuaded by Mueller's argument because it ignores the fact that, to be eligible for temporary disability in the first instance, an employee must sustain a wage loss. *See **Emmpak Foods***, 303 Wis. 2d 771, ¶9. And, because the purpose of the worker's compensation program is to compensate employees for a loss of income due to their inability to work as a result of their work-related injury, it necessarily follows that to be a compensable wage loss for worker's compensation purposes, the wage loss must be attributable to a work-related injury. Simply put, an employee who retires for reasons entirely unrelated to his or her injury cannot make such a showing because the employee's wage loss was caused by the employee's choice to voluntarily retire, not by his or her work-related injury.

¶26    Our conclusion that an employee must sustain a wage loss attributable to his or her work-related injury in order to receive temporary disability benefits is in accord with our supreme court's decision in ***Brakebush Bros***. In that case, an employee was suspended and then terminated during his healing period for making false representations about his work-related injury. ***Brakebush Bros.***, 210 Wis. 2d at 625. The supreme court determined that

9

regardless of whether the employer had good cause to terminate the employee, "an injured employee who has been terminated is nonetheless entitled to disability benefits because the employee continues to be limited by the work-related injury. It is the injury, not the termination, that is the cause of the employee's economic loss." *Id.* at 635. In other words, unlike here, worker's compensation benefits were still due to the employee because the wage loss the employee suffered post-termination was attributable, at least in part, to his work-related injury, not simply the fact that he was terminated.

¶27 Indeed, in a previous, unpublished decision involving an employee's post-retirement temporary disability claim, we decided that because the employee's decision to retire was partially motivated by his work-related injury, the employee was eligible for TTD benefits. *See Tower Auto. Milwaukee, LLC v. Samphere*, No. 2009AP1043, unpublished slip op. ¶¶37-38 (WI App Feb. 9, 2010). Those are not the facts of Mueller's case. Rather, here the ALJ explicitly found as a matter of historical fact that Mueller "did not retire because of her work injury." The Commission then adopted that finding, stating "the ALJ properly found that the applicant voluntarily retired for reasons unrelated to her work injury." Notably, Mueller does not contest that finding on appeal.

## II. Labor market re-entry

¶28 Mueller next argues that even if her voluntary retirement initially precluded her from showing she suffered an actual wage loss—thereby making her ineligible for temporary disability benefits—her subsequent attempts to re-enter the job market were sufficient to show an actual wage loss. Mueller's argument in this regard is two-fold. First, she contends that her attempts to be reinstated or rehired at Ashley were sufficient to show that she re-entered the labor market.

Second, she contends that her hiring at the cafe "clearly" showed that she "did not retire from gainful employment completely."

¶29     Both of Mueller's arguments miss the mark for the same reason as her claim regarding her voluntary retirement. Namely, Mueller fails to recognize that, regardless of whether she returned—or attempted to return—to the labor market, she is entitled to recover temporary disability benefits only if she can show she suffered an actual wage loss attributable to her work-related injury.

¶30     Relying on *Knight v. Feddick Ford Inc.*, No. 2000-012954, 2004 WL437131 (LIRC Feb. 12, 2004), Mueller asserts that if an employee does "not retire from gainful employment completely," then the employee can show that he or she has suffered an actual wage loss. Based on this premise, she contends that "[i]f a 'retired' employee is working a part-time job, or looking for part-time [or full-time] employment, he/she should qualify for temporary disability benefits for subsequent periods of temporary disability that begin after retirement."

¶31     However, Mueller's case differs from *Knight* in an important respect. In *Knight*, a mechanic suffered a compensable knee injury while working for his employer. *Id.* at *3. He subsequently retired from his position with his employer, but he continued to do auto-repair work at his home on a contract basis. *Id.* at *4. Eventually, he experienced a knee injury at home that was worse than his previous injury. *Id.* Applying the subsequent nonwork injury doctrine, an ALJ determined that this second injury was compensable. *Id.* at *6. As relevant here, the ALJ determined that the claimant also proved a total wage loss because he "was unable to do any work during the claimed TTD period because of disability in his knee." *Id.* at *8. The Commission agreed with the ALJ's decision, and it affirmed. *Id.* at *1.

11

¶32    The critical distinction between this case and *Knight* is that, here, Mueller points to no evidence showing that her attempts to re-enter the labor market were affected in any way by her work-related injury, whereas the claimant in *Knight* showed that he was unable to work because of his compensable injury. *See id.* at *8. As explained in *Brakebush Bros.*, post-termination disability claims are compensable when it "is the injury, not the termination, that is the cause of the employee's economic loss." *Brakebush Bros.*, 210 Wis. 2d at 635.

¶33    Here, Mueller points to no evidence that her subsequent attempts to regain employment at Ashley were impaired in any way by her injury. Instead, she offers the following unsupported speculation: "Ashley saw no value in hiring back a former employee with a 10-pound lifting restriction who was on the path to a right rotator cuff and biceps tendon repair surgery. If Ashley would not hire Mueller back, what full-time employer would?"

¶34    As an initial matter, this argument falters because it ignores the ALJ's finding of fact, which was adopted by the Commission, that the reason Ashley did not re-hire Mueller was because she was "not the top applicant competing for the available vacancy." Mueller does not argue that finding was unsupported by credible and substantial evidence, and so we must defer to that finding. *See* WIS. STAT. § 102.23(6). In any event, "in a worker's compensation hearing, the employee has the burden of proving the elements of his or her claim, and on appeal he or she also has the burden to show that [the Commission's] decision should be overturned." *Kowalchuk v. LIRC*, 2000 WI App 85, ¶8, 234 Wis. 2d 203, 610 N.W.2d 122. Mere speculation on Mueller's part that Ashley

saw "no value" in hiring her due to her injury falls far short of satisfying her burden to show that her work-related injury contributed to her inability to regain a position working for Ashley.[4]

¶35 Likewise, Mueller did not prove that her work-related injury contributed to any economic loss associated with her part-time employment at the cafe. To the contrary, the Commission made a finding that it was Mueller's own choice—not any injury-related concern—that dictated her workload at the cafe. Specifically, the Commission determined that Mueller:

> chose to limit her hours in that employment, that she had no wish to work more hours, that she was not working elsewhere, and that she considered the Sunflower Cafe employment an ideal "retirement job." Had [Mueller] testified she was actively looking for full-time work elsewhere, or wanted to work more hours than worked at Sunflower Cafe but could not, she might have been able to establish an actual wage loss supporting an award for temporary partial disability.

¶36 On appeal, Mueller makes a cursory argument that this finding was not supported by credible and substantial evidence because: (1) the Commission did not examine pay slips representative of Mueller's "normal schedule" at the

---

[4] We note that the ALJ's decision states that Mueller's request for reinstatement "was not approved," without making a specific finding as to why that request was not approved. On appeal, Mueller does not provide any citation to the record regarding the reason Ashley refused to reinstate her to her position, nor does she develop any independent argument regarding the reason

for the denial of her reinstatement request, as opposed to the denial of her re-application for the new position. Therefore, as with her re-application argument, we conclude that—to the extent Mueller intends to argue that the denial of her reinstatement request entitled her to temporary disability benefits—she has failed to meet her burden to show the Commission's decision should be overturned. *See Kowalchuk v. LIRC*, 2000 WI App 85, ¶8, 234 Wis. 2d 203, 610 N.W.2d 122.

Sunflower Cafe; and (2) "there is no evidence in the record that Sunrise [sic] Café has any full-time employees or full-time positions." In so arguing, Mueller ignores her own testimony, which provided more than ample support for the Commission's conclusion. Specifically, Mueller provided the following testimony at the administrative hearing, in response to questioning from Ashley's counsel:

Q      So is there anything preventing you from working full-time or 40 hours per week at the cafe?

A      No.

Q      There's nothing. Okay. You have chosen to work part-time at the Sunflower Cafe, correct?

A      Right.

Q      And have you applied for a second job to supplement Sunflower Cafe?

A      No.

Q      Do you have any intention of doing that?

A      No.

Q      Do you have any intention of increasing your hours at the Sunflower Cafe?

A      If she needs me. Otherwise, no.

Q      It's pretty flexible?

A      Right.

Q      You like it that way?

A      Right.

Q      It's a great retirement job?

A      Right.

Consequently, we defer to the Commission's finding that Mueller did not suffer any actual wage loss attributable to her work-related injury while working at the cafe. Therefore, Mueller's claim is not compensable under WIS. STAT. § 102.43.

¶37 In summary, we conclude that an employee seeking temporary disability benefits under WIS. STAT. § 102.43 must show that he or she has suffered an actual wage loss attributable to a work-related injury. In this case, Mueller failed to do so because: (1) she voluntarily retired from her employment for reasons entirely unrelated to her work-related injury; and (2) she provided no evidence that her subsequent attempts to return to the workforce were impaired in any way by her injury. Accordingly, we affirm.

*By the Court.*—Order affirmed.