COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2098**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV1626

IN COURT OF APPEALS
DISTRICT I

HOWARD L. HARRIS,

PETITIONER-APPELLANT,

V.

DEPARTMENT OF WORKFORCE DEVELOPMENT,
LABOR AND INDUSTRY REVIEW COMMISSION,
NICOLE D. FIELDS AND SOCIETY INSURANCE,
A MUTUAL COMPANY,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge.  *Affirmed*.

Before Brash, P.J., Graham and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Howard L. Harris appeals a circuit court order affirming a decision of the Wisconsin Labor and Industry Review Commission that denied Harris's claim for benefits under the Wisconsin Worker's Compensation Act, WIS. STAT. ch. 102 (2019-20).[1]  Harris argues that the Commission's decision was not based on substantial and credible evidence.  We disagree and affirm.

## BACKGROUND

¶2    Harris was employed as a caregiver by a community-based residential facility called Homes, Inc.[2]  The work incident for which Harris sought worker's compensation benefits took place on June 19, 2015.  On that date, he discovered a resident sitting on the floor.  He attempted to lift the resident, who fell back into his arms, causing Harris to feel a "pop" in his back.  Harris immediately reported the injury to his employer and was sent home.

¶3    Two days later, Harris was treated at a local emergency department for lower back pain.  When asked about his prior medical history, Harris stated that he had not experienced significant lower back pain since a motor vehicle accident in 2005.  After medical testing and imaging, it was determined that Harris had subtle narrowing of the L4-5 disc, a small left lateral recess disc herniation, mild right and left foraminal narrowing in the left lateral recess at L4-5, and mild bilateral foraminal narrowing at L5-Sl.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Nicole D. Fields and Society Insurance, A Mutual Company, are listed as respondents to this appeal.  Fields is the owner of Homes, Inc., and Society is its insurer.

¶4      Harris was referred to Dr. Thomas Perlewitz, who ultimately recommended surgical intervention.  After recovering from the surgery, Harris was told that he could return to sedentary work with restrictions.  Dr. Perlewitz eventually updated these restrictions, and Harris was allowed to work a light-duty job up to eight hours per day.  Despite attempts at conservative pain management, Harris reported a worsening of his symptoms, and a functional capacity evaluation suggested that more significant limitations were needed.

¶5      Approximately one year later, Harris filed an application seeking reimbursement of medical expenses and worker's compensation benefits for permanent disability.  In support of his claim, Harris submitted reports from Dr. Perlewitz, who opined that the June 2015 work incident "served to aggravate and accelerate [Harris's] underlying [lumbar disc degenerative] condition beyond its normal progression."  *See Lewellyn v. Industrial Comm'n*, 38 Wis. 2d 43, 58-59, 155 N.W.2d 678 (1968) (providing the applicable standard to obtain worker's compensation benefits on the ground that a work injury aggravated a preexisting medical condition).  Dr. Perlewitz assigned 27 percent permanent partial disability to Harris's back and adopted the work restrictions delineated in the functional capacity evaluation.

¶6      Homes, Inc. and its insurance provider sought an independent medical evaluation by Dr. William Monacci, and they relied on Dr. Monacci's opinion to deny Harris's eligibility for benefits.[3]  Initially, Dr. Monacci agreed

---

[3] Homes, Inc. and Society Insurance also submitted the report of a vocational expert, who opined that Harris had not lost earning capacity.  This report was in response to reports from Harris's vocational expert, which outlined Harris's work limitations and opined that he had lost earning capacity.  The competing vocational expert opinions did not factor into the Commission's decision to deny benefits, and we consider them no further.

with Dr. Perlewitz that the work incident precipitated, aggravated, and accelerated Harris's preexisting condition beyond its normal progression. However, Dr. Monacci qualified this initial opinion with the caveat that he had not received or reviewed Harris's prior medical records.

¶7 As discussed in greater detail below, Harris's medical records document an extensive history of reported low back pain and injuries, including previous work-related back injuries and injuries following at least three separate motor vehicle accidents. Among other things, the medical records reveal that Harris consulted with a doctor on April 7, 2015—the same date he started working for Homes, Inc. and just three months before the June 2015 work incident. According to the doctor's notes from this consultation, Harris rated his lower back pain as "10/10." He told his doctor that the pain "[h]appens after a day of work," and that it "started about 7 years ago but was exacerbated by a recent car accident."

¶8 After reviewing Harris's medical records, Dr. Monacci revised his opinion and concluded that Harris's pain syndrome was a chronic condition, and that the June 2015 work incident did not cause a significant change in his condition. Dr. Monacci noted Harris's significant history of low back pain and symptoms consistent with those reported by Harris after the work incident. He further concluded that the MRIs taken after the work incident were "essentially identical" to the MRIs taken in 2005 and 2007, years before the work incident.

¶9 Harris's claim proceeded to an administrative hearing before an administrative law judge (ALJ). During the hearing, the parties more or less

agreed that Harris had a permanent partial disability.[4] The dispositive issue was the cause of the disability—that is, whether Harris's preexisting condition had been precipitated, aggravated, and accelerated by the work incident, or whether his condition following the work incident was a manifestation of an ongoing pain syndrome dating back years.

¶10 After considering the evidence, the ALJ found Dr. Monacci's expert opinion to be more credible and persuasive than the expert opinion submitted by Dr. Perlewitz, and the ALJ determined that Harris's medical history created legitimate doubt that Harris's condition was precipitated, aggravated, and accelerated by the June 2015 work incident. Harris had testified that he experienced only temporary pain after each of his prior injuries and that he did not have any back problems when he went to work for Homes, Inc., but the ALJ did not credit this testimony. According to the ALJ, "inconsistencies between [Harris's] testimony regarding his medical history and the medical records cast doubt on his credibility as a witness." Based on these findings and credibility determinations, the ALJ dismissed Harris's claim for benefits.

¶11 Harris sought review by the Commission, which adopted the ALJ's findings, conclusions, and rationale as its own. The Commission concluded that the evidence did not support Harris's claim that the June 2015 work incident resulted in a compensable work injury. The circuit court upheld the Commission's decision, and this appeal follows.

---

[4] Dr. Monacci and Dr. Perlewitz both reported that Harris suffered a permanent partial disability, and they essentially agreed upon the extent of that disability. As stated above, Dr. Perlewitz assigned 27 percent permanent partial disability to Harris's back. Dr. Monacci opined that Harris had a 25 percent permanent partial disability.

**DISCUSSION**

¶12 In an appeal from an administrative agency decision, we review the agency's decision, rather than the circuit court's decision. *American Mfrs. Mut. Ins. Co. v. Hernandez*, 2002 WI App 76, ¶11, 252 Wis. 2d 155, 642 N.W.2d 584. We will reverse the Commission's decision only if it acted without or in excess of its powers, if its order was procured by fraud, or if its findings of fact do not support the order or award. WIS. STAT. § 102.23(1)(e). When the Commission's decision turns on its findings of fact, we will affirm if the record contains credible and substantial evidence to support its findings, even if there is evidence that might lead to a contrary determination. *See* § 102.23(6); *see also Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592-94, 286 N.W.2d 540 (1979).

¶13 An employee seeking worker's compensation benefits has the burden of proof, and benefits should be denied when the evidence raises a "legitimate doubt" about whether the employee is eligible for benefits. *Bumpas v. DILHR*, 95 Wis. 2d 334, 342, 290 N.W.2d 504 (1980); *see also Kraynick v. Industrial Comm'n*, 34 Wis. 2d 107, 110-11, 148 N.W.2d 668 (1967). In making a legitimate doubt determination, the Commission "cannot rely solely upon its 'cultivated intuition.'" *Kowalchuk v. LIRC*, 2000 WI App 85, ¶8, 234 Wis. 2d 203, 610 N.W.2d 122. "A legitimate doubt comprises 'some inherent inconsistency ... or conflict in the testimony.'" *Id.* (citations omitted).

¶14 Employees claiming benefits must prove, among other things, that the "accident or disease causing injury arises out of the [claimant's] employment." WIS. STAT. § 102.03(1)(e). Whether an injury was caused by a workplace accident is a question of fact. *See Bumpas*, 95 Wis. 2d at 342. Disputes about causation often arise when an employee claims that a workplace incident exacerbated the

employee's preexisting condition. Our supreme court has explained that employers take their employees "as is" and cannot deny liability simply based on a preexisting condition. *See* **Brown v. Industrial Comm'n**, 9 Wis. 2d 555, 570, 101 N.W.2d 788 (1960).[5] "If the work activity precipitates, aggravates and accelerates beyond normal progression[] a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover ….'" *Lewellyn*, 38 Wis. 2d at 59.

¶15 Here, the parties dispute causation, and the Commission resolved this dispute by adopting the ALJ's findings and conclusions. As explained above, the ALJ evaluated the competing expert reports submitted by Dr. Monacci and Dr. Perlewitz, and it found that Dr. Monacci offered the more credible and persuasive opinion that Harris's work incident did not cause his injury. On appeal, Harris asserts that the Commission violated his due process rights and public policy by affirming the ALJ's "erroneous decision." He argues that the decision is erroneous because it relies "solely" upon intuition, conjecture, and speculation, it is not based on credible and substantial evidence, it adopts "unsubstantiated assumptions" by Dr. Monacci that were contradicted by Dr. Perlewitz, it is "laced with improper credibility determinations," and it "completely disregard[s] key and relevant facts." For all of these reasons, Harris contends that the Commission

---

[5] *See also* **M. & M. Realty Co. v. Industrial Comm'n**, 267 Wis. 52, 63, 64 N.W.2d 413 (1954) ("the fact that [an employee] may be susceptible to injury by reason of a preexisting physical condition does not relieve the … employer from being held liable for [worker's] compensation benefits if the employee becomes injured due to [their] employment").

acted "in excess of its powers" when it concluded that there was a legitimate doubt that he was entitled to benefits.[6]

¶16     As demonstrated by the foregoing, Harris is attempting to frame his argument as one based on due process and questions of law.  However, all of Harris's arguments are based on the premise that the Commission erroneously credited Dr. Monacci's opinions, and that it should have instead credited the contrary evidence provided by Harris's own testimony and Dr. Perlewitz's written report.[7]  Therefore, the dispositive question is whether the Commission's findings of fact and credibility determinations are supported by substantial and credible evidence.  *See* WIS. STAT. § 102.23(6) (providing that a reviewing court "shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact," but may "set aside the [C]ommission's order or award" if it "depends on any material and controverted finding of fact that is not supported by credible and substantial evidence"); *see also* **Valadzic**, 92 Wis 2d at 592-94.

¶17     Harris argues that the Commission should have adopted Dr. Perlewitz's opinion about the cause of his current back condition.  He argues that, as the treating physician, Dr. Perlewitz is in the best position to evaluate Harris's medical condition.  Harris contends that Dr. Monacci's opinion should

---

[6] Harris also asserts that he was denied the right to a hearing, but it cannot be disputed that Harris participated in an evidentiary hearing before the ALJ in which he provided testimony and evidence.  We address this assertion no further.

[7] Indeed, in his reply brief, Harris asserts that we should reverse the Commission's decision because it "(1) erroneously [found] Harris not to be credible; (2) incorrectly determin[ed] that Dr. Monacci is more credible than Dr. Perlewitz; and (3) fail[ed] to base its findings of fact on credible and substantial evidence."

not be believed because he was "hired by the insurance company," he "examined Harris on [only] one occasion," and he "bears no responsibility" for Harris's treatment. In other words, Harris invites us to reevaluate the competing expert testimony and make our own determination as to which expert is more credible.

¶18    We decline this invitation because the Commission "'is the *sole* judge of the weight and credibility of the witnesses'" offering medical testimony, and it is the Commission's role to reconcile any conflicts or inconsistencies. *Wisconsin Ins. Sec. Fund v. LIRC*, 2005 WI App 242, ¶18, 288 Wis. 2d 206, 707 N.W.2d 293 (emphasis added) (citation omitted); *see also* **E. F. Brewer Co. v. DILHR**, 82 Wis. 2d 634, 637, 264 N.W.2d 222 (1978) ("Conflicts in testimony of medical witnesses are to be resolved by the [Commission], and a determination of the [Commission] that the testimony of one qualified medical witness rather than the testimony of another is to be believed is conclusive."). Simply put, Harris's suggestion that we substitute our own determinations about the relative credibility and persuasiveness of the medical opinions is contrary to our standard of review.

¶19    Here, the Commission adopted Dr. Monacci's opinion. Dr. Monacci concluded that the workplace incident "did not cause a significant change in [Harris's] condition," and that Harris's "surgical intervention was not reasonable and necessary with respect to the work injury of June 19, 2015, but rather an ongoing pain syndrome well documented in the medical records spanning several years and requiring intervention." For the following reasons, we conclude that this opinion is "neither incredible nor inherently unreasonable," *see* **Tuohy v. Industrial Commission**, 5 Wis. 2d 576, 583, 93 N.W.2d 344 (1958), and that it is instead supported by credible and substantial evidence.

¶20    Dr. Monacci's opinion finds support in Harris's medical records, which document an ongoing, chronic low back problem that goes as far back as 2000. Specifically, the records demonstrate that Harris was treated in 2000 for "mid to low back pain … caused by lifting objects at work"; Harris was treated in 2003 following a motor vehicle accident for "low to mid back pain"; Harris was treated in 2005 following another motor vehicle accident; Harris continued to be treated in 2006 for "severe low back pain with radiation down the left lower extremity to the entire foot"; Harris was treated in 2007 following a work-related injury for "sharp left-sided lower back pain with radiculitis down into the left leg"; Harris was treated in March 2008 for "severe pain in his left upper mid and lower back radiating to his left upper arm and left lower leg"; finally, Harris was again treated for back pain in February and April 2015 following a third motor vehicle accident. In fact, Harris visited a doctor on April 7, 2015, and the doctor's consultation notes state that Harris "is here today because of lower back pain." According to the notes, Harris described "achy" pain in his "lower back" that "radiates to his left thigh and leg." Harris rated the pain as "10/10" and stated that it "[h]appens after a day of work."

¶21    The medical records also document that Harris was given MRIs in 2005 and 2007, both of which demonstrate a disc herniation/protrusion with annular tear at L4-5 affecting the L5 nerve root. When Dr. Monacci compared the MRI images from 2005 and 2007 with the post-work incident MRI imaging from 2015, he concluded that there was no significant difference between the images. The ALJ credited this conclusion, and Harris points to nothing in the

administrative record that would give us reason to doubt it.[8]  As the Commission explained, "[t]he absence of any significant difference between the 2005 and 2007 MRI results and the post-work-incident MRI results, together with the pre-incident … medical record of April 7, 2015 … are particularly supportive of Dr. Monacci's causation opinion."

¶22    We now turn to Harris's arguments to the contrary.  Harris accuses the Commission of conducting a "cursory" review and "cherry-pick[ing]" medical records, but the record does not support this accusation.  In its decision adopting the ALJ's findings of fact and conclusions of law, the Commission expressly stated that it reviewed Harris's review petition, the hearing evidence, and the arguments set forth by the parties, and that it found the evidence to be "particularly supportive of Dr. Monacci's causation opinion."  We now examine the evidence that Harris contends the Commission ignored and explain why it does not require a contrary result.

¶23    First, and perhaps most prominently, Harris argues that he could not have had an "ongoing" condition because he did not receive any medical treatment for his back from March 2008 until February 2015.  According to Harris, Dr. Monacci failed to account for this "asymptomatic period," which "negates" his conclusion that Harris's symptoms reflect an ongoing or active chronic condition.

---

[8] In his opening appellate brief, Harris criticizes the Commission for failing to account for a letter from Dr. Perlewitz, which asserts that the similarities between the pre-and post-incident MRIs are "a moot point," and that his causation opinion "does not suggest nor did it require a change in MRI findings."  In its response brief, the Commission explains that this letter was written after the ALJ's decision and is not part of the hearing record.  Harris does not respond to this argument in his reply brief, and we consider his argument about Dr. Perlewitz's post-hearing letter no further.

¶24    We disagree.  Although the absence of medical records suggests that Harris did not *receive treatment* for back pain between March 2008 and February 2015, it does not necessarily mean that Harris was *asymptomatic* during these seven years.  Harris's assertion that he was asymptomatic is also called into question by the consultation note from April 7, 2015, which states that Harris reported that his lower back pain "started about 7 years ago but was exacerbated by a recent car accident."  Harris disputes the accuracy of this consultation note, but the ALJ found that Harris "provided no plausible reason for his medical providers to take inaccurate or incorrect notes for the purposes of treating and diagnosing [Harris]."  As the sole arbiter of witness credibility, the Commission reasonably could have credited the medical reports over Harris's conflicting testimony.

¶25    Second, Harris argues that Dr. Monacci failed to account for Harris's assertion that "all prior instances of back pain" were a "temporary" aggravation of his condition.  For example, Harris describes his symptoms following the January 2015 accident as "insignificant, temporary, and short lived."  However, the Commission did not credit Harris's account because it was inconsistent with his medical records.  Harris argues that the inconsistencies between his testimony and the medical reports are due to Harris's poor memory rather than intentional deception,[9] but Harris does not explain why this distinction matters.  Either way, the Commission was entitled to discredit testimony that was inconsistent with the

---

[9] Specifically, he argues that "the absence of a good memory does not constitute intentional deception or intentional concealment of information," and that "[t]he fact that Harris is a bad historian or does not have a good memory regarding his medical history before and after [the June 2015 work incident] does not establish that he is not credible; he just simply does not remember."

medical records; it is the inconsistency itself, not the reason for the inconsistency, which is the basis for the Commission's determination that Harris's testimony was not credible.

¶26   Third, Harris argues that Dr. Monacci failed to account for the fact that Harris was not subject to work restrictions and did not have surgery until after the June 2015 work incident.  The fact that Harris did not have restrictions when he started to work at Homes, Inc. does not mean that he did not suffer from significant back pain at that time; indeed, as discussed, Harris's medical records report that he described his pain as "10/10" on April 7, 2015, the very same day he started his employment.  Additionally, Harris's medical records demonstrate that he discussed the possibility of surgical intervention as early as 2008, seven years prior to the work incident.

¶27   For all these reasons, we reject Harris's argument that Dr. Monacci's opinion is inherently incredible or unreasonable.  *Tuohy*, 5 Wis. 2d at 583.  We conclude that Dr. Monacci's opinion and Harris's medical records provide credible and substantial evidence that the June 2015 work incident did not cause Harris's current back condition.  Therefore, the Commission properly concluded that the evidence raised a legitimate doubt about the existence of facts essential to Harris's claim.

## CONCLUSION

¶28   We conclude that Harris has not shown any reason to set aside the Commission's order.  Accordingly, we affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.